595 So.2d 214 (1992)
Paul W. KREMER, Appellant,
v.
Dawn M. KREMER, Appellee.
No. 91-02197.
District Court of Appeal of Florida, Second District.
February 28, 1992.
*215 Joseph R. Park and Andrew J. Rodnite, Jr. of Park, Rodnite, Hammond and Ossian, P.A., Clearwater, for appellant.
Watson R. Sinden, St. Petersburg, for appellee.
LEHAN, Judge.
In this dissolution of marriage case we reverse the award of permanent alimony to a 36-year-old ex-wife. The marriage had been of only approximately six years duration and had produced no children. The wife had supported herself before the marriage and was shown to be capable of doing so after the marriage except for an ankle injury suffered in a fairly recent automobile accident. She was recuperating from that injury which was not shown to have produced a permanent impairment. Otherwise she was apparently in good health.
We recognize that the ex-husband's income is far greater than that which the wife could reasonably expect to earn and that the standard of living they enjoyed during the marriage was substantially higher than that which the wife could reasonably be expected to sustain for herself without substantial permanent alimony. However, those aspects are not sufficient justification for a permanent alimony award, the level of which in this case, in fact, apparently exceeded by a substantial amount the needs the wife claimed. The husband came into the marriage with substantially more assets and income than did the wife, and there has been no showing that the disparity between the husband's and the wife's assets and income after the dissolution resulted in any substantial way from the marriage. In fact, while the wife came into the marriage without substantial assets, the final judgment of dissolution left her with $38,250 cash, an automobile valued at $10,000, a condominium valued at $46,000, jewelry valued at $3,000, and one-half of the furnishings from the marital home.
As did the Fourth District Court of Appeal in Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988), we do not perceive from this relatively short term marriage involving a relatively young wife with no children any genuine inequity created by the dissolution of the marriage without permanent alimony. In fact, the very size of the award, $3,000 per month, reinforces our conclusion that an inappropriate standard was utilized by the trial court. As did the First District Court of Appeal in Spencer v. Spencer, 590 So.2d 553 (Fla. 1st DCA 1991), concerning an award of rehabilitative alimony which was reversed, we conclude in this case concerning permanent periodic alimony that
[w]hile a short marriage alone does not preclude an award of ... alimony, the record in the present case provides no *216 support for the notion that the wife is without the means of self support, as a result of anything that has transpired during the marriage.
The considerations we have taken into account in this case are similar to those reflected in Judge Anstead's opinion in Geddes in which the Fourth District affirmed an award of only rehabilitative alimony, and no permanent alimony, to a 45 year old wife after a nine year marriage. That court's final rationale, which indicates facts of that case parallel in many respects to those of this case, was as follows:
In this case we have decided that the trial court did not err in failing to award permanent alimony to a relatively young woman who had been self-supporting all of her adult life before this nearly nine-year marriage, and who left the marriage in approximately the same condition. That is, no skills were lost, and no children were born to be raised by her. In fact, she leaves this marriage considerably wealthier than when she entered it. Whether she would have fared even better financially had she continued to pursue a career as a bookkeeper, a butcher, a caterer, or chosen another path altogether, is subject to speculation.
Id. at 1018. The following observation of the Fourth District is especially pertinent:
[N]eed and ability to pay may not be a useful formula in resolving alimony claims in a short-term marriage involving young spouses with no children where no genuine inequities are created by dissolution. In that case, virtually all would agree that a permanent support obligation by one spouse to the other outside of marriage would not be appropriate notwithstanding the disparity that may exist in their respective incomes.
530 So.2d at 1018. What the Fourth District said as background for that observation is also worth repeating to provide perspective, as we do by footnote below.[1]
We have given consideration to not holding that no amount of permanent alimony was within the trial court's discretion in this case and remanding only for a substantial reduction in the award. In fact, we not *217 only are constrained to defer to that discretion in a proper case but we genuinely respect it. However, we have concluded without doubt that there was an abuse of discretion in the award of any alimony. To decide otherwise would foster indefensible inconsistencies in the law in this area. See e.g., Fulks v. Fulks, 558 So.2d 205 (Fla. 2d DCA 1990) (upon dissolution of six year marriage husband's superior earning ability did not justify permanent alimony to 40 year old wife in good health capable of continuing her premarital employment); Campbell v. Campbell, 432 So.2d 666 (Fla. 5th DCA 1983), pet. for rev. dism., 453 So.2d 1364 (Fla. 1984) (abuse of discretion to order permanent alimony where wife had ability to become self-supporting).
No case cited by the wife supports the permanent alimony award. All such cases appear to have involved marriages of substantially greater duration, wives of more advanced years, marriages which produced a child or children, or other circumstances different from those of this case.
Deciding upon circumstances in which an appellate court should and should not defer to trial court discretion can be very difficult. But our conclusion that there was an abuse of discretion in this case follows the requisite standard of review because we conclude that reasonable men cannot differ that an award of permanent alimony was unjustified. See Canakaris. Our conclusion in that regard additionally takes into account the considerations reflected in Judge Farmer's dissenting opinion in Thomason v. State, 594 So.2d 310 (Fla. 4th DCA 1992) concerning limitations on the exercise of trial court discretion. While we express no view on the decision of the Fourth District in that case, we think the following portion of Judge Farmer's opinion is worth repeating to provide further perspective:
Judicial discretion has never been confused with the raw power to choose between alternatives, such as to go or not to go. Nor is judicial discretion unreviewable simply because the trial judge chose an alternative that was theoretically available to him. As he did with so many complex ideas, Justice Cardozo distilled *218 the essence of the thought in a few words:
The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.
B. Cardozo, The Nature of the Judicial Process, at 141. Cardozo's insight was applied by the court in Parce [v. Byrd, 533 So.2d 812 (Fla. 5th DCA 1988), rev. denied, 542 So.2d 988 (Fla. 1989)]:
[Judicial discretion] is not a naked right to choose between alternatives. There must be a sound and logically valid reason for the choice made. If a trial court's exercise of discretion is upheld whichever choice is made merely because it is not shown to be wrong, and there is no valid reason to support the choice made, then the choice made may just as well have been decided by the toss of a coin. In such case there would be no certainty in the law and no guidance to bench or bar.
533 So.2d at 814. See also State ex rel. Mitchell v. Walker, 294 So.2d 124, 126 (Fla. 2d DCA 1974).
We must take care to avoid a mechanical application of the abuse of discretion test to shrink from reviewing the incorrect application of clear legal standards or the application of the wrong standard  all in the name of deferring to the superior vantage point of the trial judge. To do so is to have the rule absorb the whole of judicial review  to have the branch assimilate the tree.
We therefore reverse the award of permanent alimony and remand for a reasoned exercise of discretion of the trial court as to whether there should be rehabilitative alimony and, if so, in what amount and for what period of time.
We also reverse the trial court's requirement that the husband provide $200,000 life insurance on his life with the wife as beneficiary "to secure the alimony payments." First, the at least substantial reduction in alimony called for by this opinion, as indicated above, would call for at least a correspondingly substantial reduction in a required amount of life insurance, if any should be required vis a vis rehabilitative alimony, which appears doubtful. Whether a life insurance requirement is necessary should be revisited upon remand. See Sobelman v. Sobelman, 541 So.2d 1153 (Fla. 1989). Second, in imposing such a requirement the trial court in this case "[o]bviously ... [would] need to consider the financial impact of any such order upon the obligated spouse." Id. at 1154 n. 2. No such consideration is shown to have been given by the trial court here. In fact, no evidence has been brought to our attention as to the availability and cost of life insurance to the 52 year old husband who has an adverse medical history.
We further reverse the requirement that the husband provide for the wife for three years a hospitalization policy with the same level of benefits which she had had under the husband's employer's group hospitalization policy. While such a requirement is generally within the trial court's discretion, see Burgess v. Burgess, 576 So.2d 1348 (Fla. 2d DCA 1991), there should be "reasonable limitations on the maximum costs to the husband of [that] requirement[]." Gay v. Gay, 573 So.2d 180, 181 (Fla. 2d DCA 1991). No such limitations were provided for here. See also Perez v. Perez, 539 So.2d 1178 (Fla. 1st DCA 1989); Jones v. Jones, 493 So.2d 19 (Fla. 5th DCA 1986); Richards v. Richards, 477 So.2d 620 (Fla. 5th DCA 1985); Miller v. Miller, 466 So.2d 356 (Fla. 5th DCA 1985). But see Blythe v. Blythe, 592 So.2d 353 (Fla. 4th DCA 1992). Contra Brandenburg v. Brandenburg, 550 So.2d 565 (Fla. 4th DCA 1989).
The husband, citing Weisfeld v. Weisfeld, 545 So.2d 1341 (Fla. 1989), also contends that the trial court erred in failing to provide in the final judgment for a division of any proceeds from the wife's pending claims against third parties growing out of *219 personal injuries she received in the automobile accident. We do not agree. There is not shown to be any entitlement of the husband to such proceeds inasmuch as the parties apparently separated at about the time of, or very shortly after, that accident. See id. at 1345, 1346 ("We note that calculation of past and future loss of wages and earning capacity, as well as past and future medical expenses, should be governed by when the marriage has ended.").
As to the above described property distributions to the wife, we would not find an abuse of discretion if we considered those awards in isolation.
In light of our reversal as to permanent alimony, life insurance, and hospitalization insurance, and the interrelationships between all awards in arriving at a fair and equitable overall result, we reverse all awards in the final judgment and remand for further consideration.
SCHOONOVER, C.J., and PATTERSON, J., concur.
NOTES
[1] After discussing the guidelines provided by the legislature and the case law to govern the discretion granted to trial courts by Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) in alimony cases, the Fourth District said,

For the most part, those guidelines do an effective job of producing a fair result, especially for those cases at opposite ends of the marital spectrum: short marriages of partners with relatively equal earning abilities and no children, and long term marriages with children and partners with substantial disparities in earning ability. There remain, however, numerous marital situations that fall somewhere on the factual spectrum between these extreme examples, and which present difficult questions for trial courts to resolve. Appellate courts have fared little better in recognizing which of these cases should be left alone under the abuse of discretion standard set out in Canakaris, and which merit intervention pursuant to the objective criteria set out in the same case.
Modern alimony really has very short historical roots. To a great extent the courts' struggle with the modern day concept of alimony simply reflects society's own struggle with the problem of providing equal economic opportunities to all, and the related concept of individual rights in the context of marriage and family. Ideally, in a society of equal rights and opportunities, all adult members of society should be able to take care of themselves. This in fact is a commendable goal and is reflected to some extent in the family law concept that parents are responsible for the care and support of their children only until they reach the age of majority. We have come a long way since a wife was considered little more than the husband's property and completely dependent upon him for support. We have even come a long way from the time a woman, while not considered property, was treated as a second-rate citizen in terms of full participatory rights in our society. As in the case of discrimination involving other deep-rooted biases, however, substantial problems remain unresolved. While our society espouses the ideal of equal rights and responsibilities everywhere, the reality, especially in the workplace, does not always mirror the ideals set out in the lofty slogans. In other words, women have not yet caught up with men in the workplace and the marketplace.
The present day problem of resolving alimony claims requires the balancing of a number of legitimate concerns. For example, the concern that one adult should not be compelled to support another adult must be weighed against the reality that many spouses primarily because of their participation in the marriage partnership, have seen their opportunities and abilities to be self-supporting diminish, while at the same time the opportunities and abilities of the other spouse have been enhanced. This, in fact, is a description of the typical marriage where the male, in the role of provider, pursued a career, while the female managed the home and raised the children. A breakup of that marriage after the children are grown will ordinarily result in the inequity of a displaced wife with no readily marketable skills facing an unfamiliar and competitive commercial environment, at a point when her husband is just reaching the peak of his earning ability. The need for some adjustment to compensate for such an inequitable situation is self-evident. That scenario, and others like it, should ordinarily result in an award of permanent alimony since those entering into a marriage partnership must share not only the benefits and successes of the relationship, but also the risk of failure and the economic consequences to the parties of such failure. Identifying any resulting inequities and working out solutions to compensate for those inequities is a difficult task for a judge presiding over dissolution proceedings.
Between the typical marriage where one spouse provides complete financial support for the family, and one where both spouses are financially self-sufficient, lie a myriad of factual situations. In many of those cases, the standard formula for determining alimony, that of need and ability to pay, simply does not work. For instance, need and ability to pay may not be a useful formula in resolving alimony claims in a short-term marriage involving young spouses with no children where no genuine inequities are created by dissolution. In that case, virtually all would agree that a permanent support obligation by one spouse to the other outside of marriage would not be appropriate notwithstanding the disparity that may exist in their respective incomes. The same may be true, but becomes more difficult to decide, if we consider the same short-term marriage but advance the marrying parties to middle age or even older. Why is this so? Could courts be utilizing alimony in some instances to compensate for society's own inability to provide meaningful opportunities for self-support or its inability to care for those who cannot take care of themselves? Is it fair or reasonable to do so? We should keep these questions in mind when addressing the issue of alimony because the ability of the courts to come up with answers to the alimony issue will continue to be affected by the ability of our society to resolve the economic and social issues related thereto. Until society makes progress in this area, courts charged with the task of balancing the equities will be left to struggle with these strongly competing concerns. Hence the wisdom of the broad grant of discretion made by the supreme court in Canakaris.
530 So.2d at 1017-18 (footnote omitted).