635 So.2d 50 (1994)
Kim ZEIGLER, Appellant,
v.
Steven M. ZEIGLER, Appellee.
No. 92-2438.
District Court of Appeal of Florida, First District.
January 14, 1994.
*51 E. Jane Brehany of Myrick, Silber & Davis, P.A., Pensacola, for appellant.
Louis K. Rosenbloum and David H. Levin of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellee.
WOLF, Judge.
The wife, Kim Zeigler, appeals from a final judgment of dissolution of marriage. The issue on appeal is whether the trial court erred in failing to award any permanent alimony. We find the trial court erred and reverse.
The trial court found as follows:
The parties were married on January 8, 1977, and separated in March of 1990. The Wife's Petition for Dissolution of Marriage was filed on August 10, 1990.
Three children were born of this marriage. The eldest is Ashley M. Zeigler, born January 10, 1981, and the twins, Erin E. and Chad M. Zeigler, were born April 30, 1985. The Wife was born February 24, 1957, and is now thirty-five years of age. A high school graduate, she worked as a receptionist for a law firm between her graduation and marriage. For one year during the marriage the Wife worked part time as a receptionist with an insurance company. She has no other independent work experience, having devoted her time to rearing the parties' three children. Mrs. Zeigler has been very active in the children's schooling and outside interests. She testified that she wants to continue as a homemaker, the children need her, and she has always been there for them.
The Husband was born on November 5, 1953, and is currently thirty-eight years of age. On July 12, 1974, two and one-half years before the parties' marriage, he started working for Federal Express. Having started in a nonflight position, he currently is a pilot for Federal Express. His net disposable income is $143,200 a year with a monthly disposable income of approximately $11,933. The parties agreed during their marriage that the Husband would earn the income and the Wife would be the homemaker.
The parties did not start their married life in luxury but gradually attained a very comfortable standard of living. In March of 1989, shortly before their marriage became unstable, the family bought a luxurious *52 home in Memphis, Tennessee, their home base. A trip to Pensacola Beach in the summer of 1990 resulted in a decision to rent a condominium, which was eventually bought, to determine whether their home base should be changed. The children were enrolled in school in the fall of 1990 in Pensacola with the Wife remaining at Pensacola and the Husband commuting between Pensacola and Memphis. Their marriage had been deteriorating for some time according to the Wife, although the Husband has expressed a willingness to make the effort to resolve their differences. It has been the Wife's decision to sever marital lines. Although claims of marital infidelity prior to the parties' separation were made, the evidence does not support such a finding. The Wife's close relationship with another man developed after the parties' separation.
While there was conflicting evidence regarding the Wife's "devotion" to her children, this Court finds she has essentially dedicated her energies to rearing the parties' children.
Both parties agree that no evidence was presented concerning Mrs. Zeigler's ability to be rehabilitated.
Based upon these facts, the trial court denied permanent alimony, awarded the wife lump-sum alimony of $1,500 per month for a period of seven years, granted child support of $1,000 per month per child, and distributed the assets of the parties. Excluding the lump-sum distribution, the husband was awarded assets that the trial court valued at $245,997, and the wife was awarded assets valued at $136,652.
The trial court discussed the parties' positions as to permanent alimony and the court's reasons for failing to award permanent alimony as follows:
Ms. Zeigler seeks periodic alimony. As there is no rehabilitation plan, this Court may only consider whether or not to make an award of permanent periodic alimony. An equal distribution of the marital assets will not, based upon the parties' current situations, fully provide for Ms. Zeigler's well-being. In making a determination of whether or not to award alimony the Court has considered all the statutory factors required pursuant to Florida Statutes § 61.08. The parties have in recent years attained a relatively high standard of living. By choice, Ms. Zeigler has a lesser standard of living in a two-bedroom condominium without the amenities of the parties' Memphis home. It is her current standard of living that this Court considers pertinent. The marriage is of relatively short duration, thirteen and one-half years. Therefore, there is no presumption of an award of permanent alimony. Ms. Zeigler is 35 years, relatively young, and has no physical or emotional restrictions. Mr. Zeigler is 38 and he also does not suffer from any physical or emotional disabilities. The age of Ms. Zeigler strongly militates against an award of permanent alimony for reasons later discussed. Mr. Zeigler has significantly greater financial resources based upon his earning capacity and based upon Ms. Zeigler's relative inexperience in the marketplace. Each party has contributed to the marriage  Ms. Zeigler rendering services in homemaking and child care.
Ms. Zeigler's main argument to support an award of permanent alimony is that she should be able to continue to devote her energies to rearing the parties' children as the parties determined during their marriage. Mr. Zeigler's main arguments against such an award are that Ms. Zeigler is an adulteress, does not have a substantial need for any additional moneys, and based upon her age, work experience and the age of the children, an award of permanent alimony would be inequitable.
This court has struggled with this issue. The case law would certainly support either parties' position. There is a developing body of case law which requires the trial court to focus on the decisions the parties made during the marriage relative to the roles of child rearing and income earning. However, countering that body of case law are the following concerns in this case. Based upon her age, Ms. Zeigler has a very long life expectancy. An award of permanent alimony for significant additional years when the marriage itself lasted 13 1/2 years would be inequitable to *53 Mr. Zeigler. Ms. Zeigler will be 47 years when their youngest children attain their majority. If she continues to focus her energies on rearing those children to the exclusion of any other interests, when they reach their majority she will essentially be untrainable for the work force. She will have a life expectancy of many more years with no interests having been developed other than rearing her children. This Court can consider of no more gender biased decision than to place Ms. Zeigler in such a position.
The decision concerning the distribution of property and the award of lump-sum alimony was explained as follows:
While this Court is aware of the body of case law which makes a complete distinction between periodic alimony and lump sum alimony, holding an award of lump sum alimony to provide for periodic support is not contemplated by the statutes, see Harvey v. Harvey, 17 FLW D983 [596 So.2d 1251] (Fla. 4th DCA April 15, 1992), it is this court's reading of the equitable distribution and alimony statutes together that such an award is appropriate. Florida Statutes § 61.075 requires the court in making an equitable distribution to consider designated relevant factors, including "the contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker .. . the economic circumstances of the parties ... the duration of the marriage, [and] any other factors necessary to do equity and justice between the parties." This Court is also aware of the position of the First District Court of Appeal that an equitable distribution of the parties' marital assets should begin with an equal division. Trial court decisions departing from the end result of an equal division of the marital assets are often overruled. However, when a trial judge is confronted with the factual scenario of a relatively short-term marriage coupled with the marital decisions these parties made relative to homemaking and income producing responsibilities, and when the marital assets do support an unequal distribution in order to achieve the goals of providing for the Wife's economic support while encouraging her to develop interests outside her family in order to focus on the quality of her life after her children have grown and developed their own independent lives, it does seem equitable to make a lump sum alimony distribution. This Court has provided reasons for the distribution scheme about to be awarded so that the appellate court may provide guidance if the statutory interpretation employed is held to be in error.
The net effect of the trial court's decision is to grant temporary support for seven years,[1] unequally distribute the assets, and totally deny the request for permanent support. The trial court's decision appears to be based upon its findings that this was a short-term marriage, the wife is relatively young and in good health, and to allow the wife to remain at home with the children without pursuing a career would constitute gender bias. We find: 1) that the marriage was not of such a short duration as to lead to a presumption against the award of permanent alimony; 2) that the age and health factors must be considered in light of all the appropriate circumstances concerning the future earning capacity of both parties; and 3) that the parties' joint decision concerning the wife's employment status while the children are minors is to be given great deference in determining whether permanent alimony is appropriate.
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established during the marriage of the parties. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). In determining whether to award permanent periodic alimony, the court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to make alimony payments. Adams v. Adams, 604 So.2d 494, 495 (Fla. 3d *54 DCA 1992). In accordance with section 61.08, Florida Statutes, the criteria to be used in making this determination include earning ability, age, health, duration of the marriage, and the value of the parties' estate.
The trial judge found that the marriage in the instant case was a relatively short-term marriage. The marriage is neither a short-term nor a long-term marriage, but rather falls in the "grey area" where a determination of entitlement to permanent alimony will be decided based upon a review of the other pertinent factors without the benefit of a presumption in favor or against permanent alimony. Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992) (11 year marriage); Ghen v. Ghen, 575 So.2d 1342 (Fla. 4th DCA 1991) (11 year marriage).[2] In Gregoire, the court upheld the award of permanent alimony and distinguished Kremer v. Kremer, 595 So.2d 214 (Fla. 2d DCA 1992), a case where an award of permanent alimony had been overturned. The Gregoire court distinguished Kremer on the basis of length of marriage, number of children involved, an agreement between the parties concerning the wife staying home to take care of the children, and the disparity in earning power between the husband and wife which had arisen during the marriage. All of the factors mentioned in Gregoire, supra, as being positive factors in favor of the award of permanent alimony exist in the instant case.
The relative youth of the appellant also does not justify the total denial of permanent alimony unless there is some evidence that the appellant can attain a level of self support reasonably commensurate with the standard of living established during the marriage. Ghen, supra. A party is not self supporting because he or she has the opportunity to enter the job market without some evidence of the ability to earn a salary which would allow the party to live in accordance with the lifestyle established during the marriage. Askegard v. Askegard, 524 So.2d 736 (Fla. 1st DCA 1988), rev. denied, 536 So.2d 243 (Fla. 1988); Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA 1991) rev. denied, 592 So.2d 679 (Fla. 1991).[3] An award of rehabilitative alimony or temporary support should not result in a significant reduction in the standard of living of one spouse below the standard the parties enjoyed during the marriage. Steinberg v. Steinberg, 614 So.2d 1127 (Fla. 4th DCA 1993). The disparate earning power of the parties is, therefore, a significant factor in determining whether permanent or temporary support is appropriate. Greely v. Greely, 583 So.2d 1078 (Fla. 1st DCA 1991), Akers, supra; Ghen, supra. In situations where the superior earning power of one spouse is achieved during a period when the other spouse is out of the job market as a result of an agreement that the nonworking spouse will care for the children, the courts of this state have reversed awards of temporary support in lieu of permanent alimony. Anderson v. Anderson, 617 So.2d 1109 (Fla. 1st DCA 1993); Shudlick v. Shudlick, 618 So.2d 740 (Fla. 4th DCA 1993); Wolff v. Wolff, 576 So.2d 852 (Fla. 1st DCA 1991); Cruz v. Cruz, 574 So.2d 1117 (Fla. 3rd DCA 1990). Raising children constitutes a significant contribution to the family and frees the other spouse to pursue the wage-earning functions. In Bender v. Bender, 363 So.2d 844, 845 (Fla. 1st DCA 1978), the court cited with approval the order of the trial court granting permanent alimony which stated as follows:
It was decided early in the marriage that Mrs. Bender should abandon her skills as a secretary, whatever they were, for there is no testimony of her level of skill, and learn a new job, that of being a full time housewife and mother when the time came. The plan apparently worked well, satisfying both parties until the petitioner filed his *55 suit to dissolve the marriage. A suit to end the marriage doesn't automatically end the responsibilities each has to the other and the offspring of the union.
The essential plan of the parties concerning their children should continue regardless of their marital status, if such is possible. It was decided by both parties, in better times, that the wife should be a full time mother; the husband has the means to see that objective fulfilled. So it shall be.
By the time the youngest child reaches an age at which the respondent wife might attempt to return to the job market, be it secretarial or as an actress, she will be close to fifty years old, a time in one's life when it is difficult to enter any job market. The people she would be competing with would have had that additional time and work experience to acquire skills while hers lay dormant. It is too much to expect her to be a full time mother and at the same time keep her secretarial and acting skills, whatever they may be, competitive with others.
Great deference should be accorded the joint decision of the parties that the wife should stay home to care for the children (a course of conduct which was pursued for almost 13 years), notwithstanding any personal feelings the trial court or this court may have concerning the ultimate wisdom of that decision. Gregoire v. Gregoire, supra.
In addition, there is nothing in the record to indicate that the wife will ever be able to support herself in a manner reasonably commensurate with the lifestyle attained during the marriage. There is also no serious contention concerning the husband's inability to provide some level of permanent support. Need and support have been conclusively established, under these circumstances the decision to award temporary support in lieu of permanent alimony constituted an abuse of discretion. Akers, supra; Meachum v. Meachum, 580 So.2d 331 (Fla. 2d DCA 1991); Cruz v. Cruz, supra. The decision of the trial court to deny all permanent alimony is reversed, and the case is remanded to the trial court for further consideration in light of this opinion.
ERVIN and JOANOS, JJ., concur.
NOTES
[1] While the temporary support in this case was designated as lump-sum alimony, the trial court candidly concedes that the purpose of the award was essentially to provide temporary support. We will treat it as such, notwithstanding its designation. See Larrauri v. Larrauri, 584 So.2d 31 (Fla. 3d DCA 1991) n. 1 and cases cited therein.
[2] Other cases determining that permanent alimony is appropriate in marriages of comparable length: Wolff v. Wolff, 576 So.2d 852 (Fla. 1st DCA 1991); Nelson v. Nelson, 588 So.2d 1049 (Fla. 2nd DCA 1991); Hirst v. Hirst, 452 So.2d 1083 (Fla. 4th DCA 1984); Hinebaugh v. Hinebaugh, 403 So.2d 451 (Fla. 5th DCA 1981).
[3] While the relative youth of a party when coupled with evidence of a party's potential earning capacity may result in an award of both permanent and temporary support, in a situation where the potential earning powers of the parties for the foreseeable future are significantly disparate, an award of some level of permanent alimony is appropriate. Anderson v. Anderson, 617 So.2d 1109 (Fla. 1st DCA 1993).