659 So.2d 336 (1995)
Rachael Helms WEBB, Appellant,
v.
Gov E. WEBB, Appellee.
No. 94-1750.
District Court of Appeal of Florida, First District.
April 11, 1995.
Robert B. Staats, Panama City, for appellant.
Carroll L. McCauley, Panama City, and Elliot Zisser, Jacksonville, for appellee.
WEBSTER, Judge.
Appellant (the former wife) seeks review of a final order reducing the amount of her monthly permanent alimony by more than one-third, and denying her request that appellee (the former husband) be required to pay some or all of her attorney fees and costs. As to both issues, we conclude that the order constitutes an abuse of discretion. Accordingly, we reverse.
The amount of permanent periodic alimony to be paid by the former husband to the former wife was established by the final judgment entered in 1992, dissolving the parties' marriage. Approximately one year after the final judgment had been entered, the former husband filed petitions requesting that the amount of his obligation to pay alimony be reduced because his income had declined and the former wife had received proceeds from the sale of stock distributed to her incident to the final judgment, which proceeds were sufficient to permit her "to fully support and maintain herself." Coincident with the filing of his petitions, the former husband unilaterally reduced the amount of his monthly alimony payment to the former wife by almost two-thirds.
The evidence presented at the hearing on the former husband's petitions, viewed in a light most favorable to him, established that his monthly income had increased by at least fifty percent since the entry of the final judgment. Accordingly, there was, and is, no real question regarding the former husband's continuing ability to pay the amount of alimony originally awarded. In fact, counsel for the former husband conceded both during the former husband's deposition and before this court that the former husband continues to possess the financial wherewithal to pay the amount of alimony originally awarded. The only real issue raised was whether the former wife's financial position had been so improved by the proceeds received from the sale of the stock awarded to her as to warrant *337 the requested reduction in the amount of permanent periodic alimony.
The amount of alimony awarded by the final judgment was based upon the finding that, during their marriage, the parties had been fortunate enough to have enjoyed a very comfortable  some might even say relatively lavish  lifestyle. The evidence presented at the hearing on the former husband's petitions for modification established that, while the former wife continued to live comfortably after the dissolution, even with the additional income generated by the proceeds from the stock sale, she would be unable to live in the style enjoyed by the parties during their marriage without the amount of alimony originally awarded. Moreover, there was no question about the fact that the former husband would be able to enjoy a lifestyle at least as good as that established during the marriage, even if he were required to continue to pay the full amount of alimony. In other words, this is one of those "exceptional cases" in which the parties' resources are sufficient to permit them to maintain separate lifestyles after divorce consistent with that enjoyed by them during their marriage. See Fontana v. Fontana, 617 So.2d 418, 419 (Fla. 1st DCA 1993) (citing Pirino v. Pirino, 549 So.2d 219 (Fla. 5th DCA 1989)).
To establish entitlement to the requested modification, the former husband was obliged to prove that the modification was warranted because of a substantial and material change in the circumstances of the parties since the entry of the final judgment. E.g., Zipperer v. Zipperer, 567 So.2d 916 (Fla. 1st DCA 1990), review denied, 581 So.2d 1312 (Fla. 1991). Given the evidence, we believe that it is clear that the former husband did not carry that burden.
The principal purpose of permanent periodic alimony was explained in Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980):
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
It is true that the former wife's ability to earn income had increased as a result of receipt of the proceeds from the sale of the stock. However, it is also true that the former husband's income had increased. In fact, his income had increased by a significantly greater amount than had the former wife's. Moreover, and of critical importance, notwithstanding the increase in her income, the former wife continued to need the full amount of alimony originally awarded to permit her to enjoy the lifestyle established during the marriage. In addition, the former husband could continue to pay that amount and easily enjoy a lifestyle at least as comfortable as that established during the marriage. Given these facts, we conclude that the order reducing the amount of the alimony award was an abuse of discretion. See generally Kelly v. Kelly, 557 So.2d 625 (Fla. 4th DCA 1990) (in determining propriety of permanent periodic alimony award, consideration must be given to lavish lifestyle enjoyed during marriage and disparity between parties' ability to produce income); Halberg v. Halberg, 519 So.2d 15 (Fla. 3d DCA 1987) (abuse of discretion not to award permanent periodic alimony commensurate with lavish lifestyle enjoyed during marriage); Dwyer v. Dwyer, 513 So.2d 1325 (Fla. 2d DCA 1987) (substantial permanent periodic alimony award affirmed where it appeared trial court had attempted to ensure that both parties would be able to continue to enjoy standard of living like that during marriage); Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA) (given undisputed ability of husband to pay, trial court abused discretion in failing to award wife substantial amount of permanent periodic alimony, sufficient to permit her to continue to enjoy lifestyle established during marriage), review denied, 482 So.2d 347 (Fla. 1985); Rion v. Rion, 421 So.2d 541 (Fla. 5th DCA 1982) (trial court abused discretion in failing to take into account disparity between parties' income and assets, and luxurious lifestyle enjoyed during marriage, in setting amount of permanent periodic alimony). Likewise, we conclude that it was an abuse of *338 discretion to deny the former wife's request that the former husband be required to pay some or all of her attorney fees and costs. See, e.g., Nowell v. Nowell, 634 So.2d 235 (Fla. 1st DCA 1994) (abuse of discretion, given disparity in parties' income and resources, to deny request that former spouse be required to contribute to attorney fees); Meloan v. Coverdale, 525 So.2d 935, 937 (Fla. 3d DCA) (where there is no question regarding ability to pay, factors such as "refractory attitude toward payment of alimony" should be considered in determining right to attorney fees incurred in enforcing obligations), review denied, 536 So.2d 243 (Fla. 1988).
We reverse the reduction in the amount of permanent periodic alimony; and we remand with directions that the trial court reinstate the original award retroactive to the date on which the reduction became effective. The trial court shall also establish an arrearage in the amount representing the difference between what the former husband has paid during the period since the effective date of the reduction and what he owes as a result of this opinion, and a schedule for the payment of that arrearage. We also reverse the denial of the former wife's request that the former husband be required to pay some or all of her attorney fees and costs. On remand, the trial court shall determine what amount the former husband should pay to the former wife on account of her attorney fees and costs, consistent with this opinion.
REVERSED and REMANDED, with directions.
MICKLE, J., concurs.
BENTON, J., concurs and dissents with written opinion.
BENTON, Judge, concurring and dissenting.
Despite significant changes in the parties' financial positions attendant on the sale of stock in a closely held corporation, the evidence did not demonstrate a material change that would justify a reduction in alimony. Capital gains taxes Mrs. Webb had to pay and extremely conservative investment choices she was entitled to make resulted in surprisingly little additional income. While married, she had become accustomed to helping Mr. Webb spend large sums of money, and she also had serious health problems.
But the final judgment of dissolution of the parties' marriage provided: "Due to the relatively equal distribution of the marital assets and the income available to the husband and the wife after the payment of alimony, each party shall pay their own attorney's fees and costs in this matter." This provision has never been disturbed. After Mrs. Webb realized in excess of $900,000.00 from the post-dissolution stock sale, it was even more apparent that no award of attorney's fees was "necessary to ensure the former wife assistance of counsel." Nowell v. Nowell, 634 So.2d 235, 237 (Fla. 1st DCA 1994).
The majority seems to hold that the trial court abused its discretion in failing to require Mr. Webb to pay fees and costs as punishment for his supposed "refractory attitude toward payment of alimony." Meloan v. Coverdale, 525 So.2d 935, 937 (Fla. 3d DCA 1988). After he filed his motion to modify the final judgment by reducing the amount of alimony, Mr. Webb started paying Mrs. Webb monthly alimony of only $3,500 instead of the $9,500 required by the final judgment of dissolution. Since Mr. Webb had the ability to make the higher payments, his initial failure to comply with the judgment, which had not then been stayed or modified, was unquestionably unlawful. But the appropriate remedy to make Mrs. Webb whole is an order on remand requiring immediate payment of the arrearage with interest.
I cannot agree that the learned trial judge abused his discretion in refusing to require Mr. Webb to bear Mrs. Webb's attorney's fees and costs. Mrs. Webb incurred attorney's fees and costs because Mr. Webb required her to litigate whether the liquidation of stock which had not paid dividends resulted in sufficient additional income to lessen the need for alimony. The question was sufficiently close that he prevailed in the trial court. Mr. Webb had every right to litigate this question, and should not be penalized for having done so. The court today reverses *339 the trial judge's decision not to take unwarranted punitive measures against him.