677 So.2d 1301 (1996)
Donald C. YOUNG, Appellant/Cross-Appellee,
v.
Martine Denn YOUNG, Appellee/Cross-Appellant.
No. 95-1350.
District Court of Appeal of Florida, Fifth District.
July 26, 1996.
*1303 Deborah Marks, North Miami, and Richard West, P.A., Orlando, for Appellant/Cross-Appellee.
Andrea L. Cain and John M. Cain of Cain & Ewald, P.A., Orlando, for Appellee/Cross-Appellant.
ANTOON, Judge.
In this appeal and cross-appeal from a final judgment of dissolution of marriage, we affirm the trial court's valuation of a spouse's ownership interest in a medical practice. We reverse, however, the trial court's 1) award of lump sum alimony, 2) refusal to award permanent alimony, and 3) valuation and distribution of a promissory note.
The Youngs are a professional coupleone is a medical doctor and the other an engineer. They were married in 1978 after living together for approximately two years. At the time of the marriage they lived in Texas, where the doctor was completing the requirements for a Ph.D. in physiology and the engineer was working as an unlicensed engineer. Like many professional couples, the Youngs had a plan. Theirs was a ten-year plan. According to their plan, the physiology student would pursue a medical education in order to increase the couple's future earning power, while the engineer would work to meet the couple's immediate needs. It was agreed that the engineer would work on a contract basis, foregoing job security and benefits in favor of greater cash earnings. Once the doctor received a medical degree, the couple would move to Florida. The doctor would then establish a medical practice which would provide substantial income and a high standard of living. When the medical practice generated sufficient income, the engineer would then start a private business.
The couple executed the plan well. The doctor attended medical school in Texas, while the engineer worked at various manufacturing and engineering jobs, providing most of the parties' income. After receiving a medical degree, the doctor enrolled in a residency program in anesthesiology at Shands Teaching Hospital in Gainesville, Florida. For the first two years of the doctor's training at Shands, the engineer remained in Texas to work, visiting Gainesville whenever possible. Thereafter, the engineer moved to Gainesville in an effort to obtain employment. When this proved impossible, a job was secured with an Orlando construction firm, but the engineer was required to work at a site in St. Marys, Georgia. Because housing was difficult to find in St. Marys, the engineer lived in a camping trailer. During the residency program, the engineer used earned income to pay rent for the three-bedroom house in which the doctor lived.
Upon completion of the residency program, the doctor took a position with an established anesthesiology practice in Orlando, and the engineer took a position in Brevard County. As expected, the doctor earned substantial income and the parties' attained a high standard of living. In addition to purchasing a waterfront vacation home in Merritt Island, they enjoyed traveling. Their travels included regular winter ski trips, boating vacations in Hawaii and Tahiti and shopping jaunts to New York City. The parties also indulged themselves in expensive hobbies. The wife had an extensive antique collection, and the husband *1304 engaged in an unprofitable boat business. After their plan seemingly reached fruition, the parties began to experience marital difficulties. In 1991, the couple separated. Efforts to reconcile failed, and two years later the marriage was dissolved.
After the separation, the doctor loaned a brother $50,000 without the engineer's knowledge. The loan was made using the proceeds from a bank loan which the doctor obtained without informing the engineer.
At the time of the final hearing the parties had been married for fifteen years. The doctor was 44-years old and the engineer was 48-years old; both were in good health. The doctor's annual income was $400,000-$450,000, and the engineer's annual income was $54,000. The doctor's financial affidavit showed monthly expenses of $18,309, and the engineer's showed monthly expenses of $9,376.
The trial court denied the engineer's request for permanent alimony, and instead, awarded the engineer lump sum alimony of $2,000 per month for two years, followed by $1,000 per month for an additional two years. The court valued the $50,000 promissory note from the doctor's brother at $1,000 and deemed the bank loan to the doctor a marital obligation for which the engineer shared responsibility.
On appeal, the doctor contends that the trial court erred in awarding the engineer lump sum alimony, arguing that there is no legitimate basis for the award. On the other hand, the engineer argues that the trial court erred in refusing to award permanent alimony. The engineer maintains that a fifteen-year marriage is "long term" and that an award of permanent alimony is necessary to maintain the standard of living enjoyed during the marriage. The engineer also contends that sacrifices made toward the doctor's medical career should be considered in deciding whether to award permanent alimony. The engineer further contends that the trial court's determination that the $50,000 debt is a marital obligation is unjust.

LUMP SUM ALIMONY
We first address the award of lump sum alimony. Lump sum alimony may be awarded as either support or equitable distribution. In this regard, lump sum alimony should be awarded as support only when the recipient is entitled to permanent alimony based on the receiving spouse's need for support and the paying spouse's ability to pay support. Gorman v. Gorman, 400 So.2d 75, 78 (Fla. 5th DCA 1981). Lump sum alimony is not modifiable and is not terminable upon the death or remarriage of a spouse unless expressly provided in a settlement agreement between the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980). Thus, an award of lump sum alimony for support of a spouse is to be made only when unusual circumstances exist which would require a non-modifiable award of support. Lynch v. Lynch, 437 So.2d 234 (Fla. 5th DCA 1983).
Here, the trial court ruled that the engineer was not entitled to receive permanent or rehabilitative alimony, and thus, this lump sum alimony award was clearly not intended to constitute support. This conclusion is further supported by the trial court's failure to set forth the unusual circumstances justifying an award of lump sum alimony and its decision to make the award terminable upon the engineer's death. Further, there is no reason to believe the trial court intended to use the lump sum alimony award as a means of achieving equitable distribution because a separate lump sum award of $80,000 was made specifically for that purpose. Accordingly, the award of lump sum alimony set forth in paragraph 10 of the final judgment must be reversed.

PERMANENT PERIODIC ALIMONY
We next consider the trial court's failure to award permanent periodic alimony. We conclude that the trial court utilized an improper standard in determining entitlement to permanent alimony.
Subsection 61.08(2), Florida Statutes (1995), enumerates the factors which trial courts must consider in determining whether to award permanent alimony:
61.08 Alimony.

* * * * * *
*1305 (2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
The trial court articulated its reasons for denying the engineer's request for an award of permanent alimony in its final judgment and, in so doing, directly or indirectly addressed each of the criteria contained in subsection 61.08(2). The court then explained that no rehabilitative alimony was awarded because the engineer was 48-years old, had always worked as an engineer, and, most importantly, no rehabilitative plan had been suggested. Permanent alimony was denied because the engineer "was self-supporting prior to this marriage," supported a family from a previous marriage, and worked throughout the marriage. In a separate memorandum of ruling, the trial court recited a chronology of the marriage, explaining that the doctor had assisted in supporting the engineer's children from a prior marriage, that the doctor had part-time jobs while in medical school, that medical school tuition in Texas was low, and that by the time of the dissolution, the engineer had entered into another relationship. The trial court expressed hope that the engineer's new companion would feel an obligation to assist in the support of the engineer. The trial court also observed that some of the doctor's income had been invested in the engineer's failed business. The trial court considered the length of this marriage as militating against an award of permanent alimony. Finally, the trial court concluded:
Neither party is entitled to traditional alimony which was payable periodically, for life, and was provided to sustain the former spouse ... who was not able to sustain... [a] respectable standard of living.

(emphasis added).
While we are reluctant to define a fifteen-year marriage as long term so as to create a presumption in favor of permanent alimony, we cannot construe it as a short term marriage. Instead, the length of this marriage falls within the "gray area" described in Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992) (an eleven-year marriage), and Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994) (a thirteen-year marriage). In the case of marriages which fall within the gray area, we agree with the first and second districts that entitlement to permanent alimony should be decided based upon a review of the other pertinent factors without the benefit of a presumption in favor of or against permanent alimony. Zeigler v. Zeigler, 635 So.2d at 54.
We have a similar view of the trial court's determination that the engineer's age weighs against an award of permanent alimony. While forty-eight is not elderly, it is not so youthful as to serve as an advantage in the competitive and dynamic career of engineering. A spouse's age is not a valid basis to deny permanent alimony absent evidence that the spouse's youth would allow her or him to earn income sufficient to support a life-style consistent with that enjoyed during the marriage. Ghen v. Ghen, 575 So.2d 1342, 1344 (Fla. 4th DCA 1991).
We also do not agree that an obligation to support a family from a previous marriage is relevant in the determination of entitlement to permanent alimony without some indication that the obligation had a significant impact on the family's finances. *1306 Nor do we agree that a post-separation relationship should impact a determination of entitlement to permanent alimony, although it would be entirely proper for the trial court to refuse an award or to reduce an award to the extent it was indicated that the alimony funds would be used to support a third person. See Long v. Long, 622 So.2d 622, 624 (Fla. 2d DCA 1993); Eckroade v. Eckroade, 570 So.2d 1347, 1349 (Fla. 3d DCA 1990); Williamson v. Williamson, 367 So.2d 1016 (Fla.1979).
Florida law is clear that "the purpose of permanent alimony is to enable the former spouse to maintain the life-style enjoyed during the marriage." Knecht v. Knecht, 629 So. 2d 883, 887 (Fla. 3d DCA 1993), rev. denied, 639 So.2d 978 (Fla.1994). In Canakaris, our supreme court explained that
[p]ermanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
Canakaris v. Canakaris, 382 So.2d at 1201 (emphasis added). Further, the disparate earning capacity of the parties is "a significant factor" in deciding whether permanent or temporary alimony is warranted. Reynolds v. Reynolds, 668 So.2d 245, 247 (Fla. 1st DCA 1996) (citing Zeigler v. Zeigler, 635 So.2d 50, 54 (Fla. 1st DCA 1994); Greeley v. Greeley, 583 So.2d 1078 (Fla. 1st DCA 1991)). Permanent alimony is appropriate where the income of the spouse seeking alimony cannot support that spouse in accordance with the life-style established during the marriage. Webb v. Webb, 659 So.2d 336, 337 (Fla. 1st DCA 1995). For purposes of determining entitlement to alimony, a spouse is not self-supporting just because he or she has a job and income. To the extent possible, a divorced spouse is entitled to live in a manner reasonably commensurate with the standard established during the course of a marriage, notwithstanding that the spouse is employed. O'Neal v. O'Neal, 410 So.2d 1369 (Fla. 5th DCA 1982).
In the instant case, the doctor's income is roughly eight times greater than that of the engineer. While the doctor's income might increase, there is no record evidence that the engineer's income will ever increase to the extent that it would support the life-style enjoyed by the parties during the marriage. Because the other criteria do not strongly indicate that the award should be granted or denied, this income disparity is "a significant factor" and weighs heavily in favor of an award of permanent alimony. Zeigler, 635 So.2d at 54. While there is nothing in the record to indicate that the engineer's income will diminish in the foreseeable future, there is little question that the standard of living enjoyed by the engineer will be greatly diminished as a result of the termination of the marriage. Instead of being one of two people living on a combined income exceeding $450,000-$500,000, the engineer will live on a gross income of $54,000.
The engineer's contributions to the marriage with regard to assisting the doctor in attaining a medical degree were discounted by the trial court. There was unrefuted testimony that the couple agreed to work as a team so that the doctor could complete medical school and specialty training in order to attain a high standard of living. Although the engineer did not remain at home to care for children, as is often the case in reported alimony cases involving professions with high incomes, hardships were undertaken, including working away from home, working on a contract basis instead of as a salaried employee, and financially supporting the doctor's career goals. Personal or career sacrifices of a spouse during the period the other spouse achieves superior earning power should weigh in favor of an award of permanent alimony. See Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992). Cf. Kennedy v. Kennedy, 622 So.2d 1033, 1035 (Fla. 5th DCA 1993), disapproved on other grounds, 641 So.2d 408 (Fla.1994). Such sacrifices should be weighed in favor of an award of permanent alimony in the instant case.

*1307 EQUITABLE DISTRIBUTION

The trial court also erred in one aspect of its equitable distribution of the parties' marital property. Specifically, the engineer was held responsible for one-half of the $50,000 loan the doctor borrowed from the bank. At the final hearing, the doctor was asked whether the loan would ever be repaid by the brother, and the doctor responded, "I kind of doubt it." The court accepted the doctor's speculation that the brother would probably not repay the loan and valued the promissory note at only $1,000. The record demonstrates that the decisions to make the loan to the brother, to borrow the funds from the bank, and to forego collection of the debt were all unilaterally made by the doctor while the parties were separated. The result of the trial court's ruling is that the engineer has been improperly required to gift the doctor's brother $25,000.
While we recognize that a loan made to a relative is not necessarily a waste or misuse of assets, it would be unjust under the circumstances of this case to hold the engineer responsible for the doctor's obligation to the bank. See Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla. 3d DCA 1992). As suggested in Rosenfeld, the trial court could consider the full amount of the promissory note an asset of the doctor for purposes of equitably distributing assets, or balance the full amount of the note against the obligation of the bank resulting in a wash. Id. at 837.

CONCLUSION
We note that the trial court conscientiously and copiously explained its ruling. While we are reluctant to disturb the judgments of trial courts in dissolution cases when rulings are accompanied by findings of fact, we must do so here.
We reverse the award of lump sum alimony in paragraph 10 of the final judgment, the denial of permanent alimony, and the distribution of the parties' assets and obligations with regard to the bank loan of $50,000 and the promissory note from the doctor's brother. This case is remanded to the trial court to enter an award of alimony and make equitable distribution in accordance with this opinion. In all other respects, the final judgment is affirmed.
REVERSED in part; AFFIRMED in part.
HARRIS and THOMPSON, JJ., concur.