722 So.2d 283 (1998)
Valerie Joan POLLOCK, Appellant,
v.
Raymond L. POLLOCK, Appellee.
No. 97-830
District Court of Appeal of Florida, Fifth District.
December 31, 1998.
*284 William R. Northcutt, P.A., Indian Harbour Beach, for Appellant.
Maureen M. Matheson, of Reinman & Wattwood, P.A., Melbourne, for Appellee.
THOMPSON, J.
Valerie Joan Pollock, the former wife, appeals a post-dissolution order which converted her $600 per month rehabilitative alimony to $794 per month permanent alimony. The former wife argues on appeal that the permanent alimony amount is insufficient, and that $3,000 to $5,000 is more appropriate considering a marriage which lasted six years and during which she enjoyed an excellent lifestyle. Since the husband did not cross-appeal the award of permanent alimony, the only issue in the case is whether the trial court abused its discretion when it set the amount of permanent alimony. We think it did not, and affirm.
The marriage of the parties was dissolved by a judgment that incorporated the parties' marital settlement agreement. The wife unsuccessfully attempted to have the judgment set aside on the ground that she was incompetent when she signed the agreement. Part of the agreement concerning alimony stated: "The husband agrees to pay to the wife, as and for rehabilitative alimony, the sum of $600.00 until the sale [and] closing of their home." After a hearing, the trial court found that the former wife was competent at the time she signed the agreement. In Pollock v. Pollock, 643 So.2d 1200 (Fla. 5th DCA 1994), we affirmed the denial of relief, but we also pointed out that the affirmance was without prejudice to the former wife to petition for modification to extend or increase the rehabilitative alimony, or to convert it to permanent alimony. Thereafter, the former wife filed a supplemental petition for modification seeking, among other things, permanent alimony. This appeal is taken from the modification judgment.
The record supports the allegation that the former wife suffers from mental health problems. Her total income is the support from her former husband, contributions of approximately $100 to $800 per month from her son by a prior marriage, and approximately $381 she receives from Social Security. She has a high school diploma and has been employed sporadically. The testimony before the trial court was that she is very involved in religious matters and lives alone after a failed attempt to live with her son. Currently, she lives frugally in a one bedroom apartment, which she considers very nice, in a complex *285 with a jogging path, a pool, a Jacuzzi, and a club house.
In setting the amount of permanent alimony, the trial court considered the statutory requirements and applied them to the facts. See § 61.08(2), Fla. Stat. The trial court found that the marriage was of a short durationapproximately six yearsbut that the wife was entitled to $749 per month permanent alimony because of her mental health problems, which could not have been contemplated at the time of the marital settlement agreement and the final judgment. The court considered the income and need of the former wife, the former husband's income, expenses, and financial reversals, and the fact that the former husband would remain the sole provider for the parties' child. The court also considered the catastrophic termite damage to the former marital home, where the former husband was residing, and determined that the damage constituted another change in circumstances. The court determined that the former husband had a cash flow problem, but that he could pay alimony. Further, the trial court ordered the former husband to pay the former wife's attorney's fees of $22,153, and costs of $3,535.
The former wife was awarded permanent alimony even though arguably, this marriage fell into the grey area between a long-term and a short-term marriage. There is no presumption for or against permanent alimony where the marriage falls into the grey area. See Young v. Young, 677 So.2d 1301 (Fla. 5th DCA 1996); Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994). Cf. Hann v. Hann, 629 So.2d 918 (Fla. 2d DCA 1993); Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992). By analogy, then, where a marriage is in the grey area, even where permanent alimony is justified and awarded, the amount of the award can also be in a grey area. That is, the general rule, that the payee spouse should be afforded a lifestyle commensurate to that of the marriage, would not necessarily apply. Indeed, although the purpose of permanent alimony is to provide the needs and the necessities of life as they have been established by the marriage of the parties, and although the two primary elements to be considered when determining permanent periodic alimony are need and ability to pay, Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), in establishing the need, the factors to be considered include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates, id .
It is clear from the record that the trial court considered the marital settlement agreement in which the former wife agreed to rehabilitative alimony of $600 per month which has been increased and changed to permanent alimony. The lower court found a substantial change in circumstances which allowed the court to modify the settlement agreement finding the former wife had met her heavier than usual burden of proof to modify the agreement of the parties. Pimm v. Pimm, 601 So.2d 534 (Fla.1992). Thus, the only question is whether the trial court had a basis for the award. We find there is a basis for the trial court's decision and that it did not abuse its discretion, although reasonable persons could differ. As the Supreme Court has stated:
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
Canakaris at 1203. We find no error in the lower court's ruling.
AFFIRMED.
PETERSON, J., concur.
ANTOON, J., concurs in result only.