961 So.2d 1118 (2007)
Thomas C. JESSEE, Appellant,
v.
Tiffany M. JESSEE, Appellee.
No. 2D06-4186.
District Court of Appeal of Florida, Second District.
August 8, 2007.
Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellant.
Michael J. Park and Joseph R. Park of Park, Ossian, Barnaky & Park, P.A., Clearwater, for Appellee.
LaROSE, Judge.
Thomas C. Jessee, the Husband, appeals the final judgment dissolving his marriage to Tiffany M. Jessee, the Wife. He argues *1119 that the trial court erred in denying him permanent alimony and in calculating the Wife's income. We affirm the final judgment.
The couple married in 1992, after the Wife graduated from college. Thereafter, she attended medical school in Virginia, during which time the Husband earned about $17,000 per year as the women's basketball head coach at Bluefield State College. They lived on the Husband's income and the Wife's substantial student loans. The Wife completed medical school in 1997. The Husband was then earning $27,000 a year at Bluefield State College and was a top women's basketball coach.
The couple moved to Clearwater for the Wife's medical internship and residency. The Husband secured a coaching position at a local high school; his starting salary was $27,000 a year. At the end of the Wife's medical residency, the Husband was earning $34,000 per year as women's basketball head coach at the University of Tampa. The Wife pursued a medical fellowship in Miami; the Husband remained in Clearwater and in his coaching position at the University of Tampa during her fellowship year.
In 2004, the Wife began work at Suncoast Hospital as a bariatric surgeon. Her starting salary was $200,000 a year. The hospital also provided a student loan forgiveness benefit. The Wife earned $272,413.38 in 2004 and $280,119.30 in 2005. The Husband's income was $34,202.96 in 2004 and $39,000 in 2005. In 2006, the Wife's income decreased significantly because of a new Medicare rule that reimbursed for bariatric surgery only if performed at a "Center of Excellence,"[1] which Suncoast Hospital was not. At the time of the final hearing, the Wife had applied for but had not obtained surgical privileges at Palms of Pasadena Hospital in St. Petersburg, the area's then only Center of Excellence.
The Husband sought permanent periodic alimony of $4000 per month, the amount he was receiving from the Wife as temporary alimony. Under section 61.08(2), Florida Statutes (2006), the trial courts must consider several factors in deciding whether to award permanent periodic alimony:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
The trial court made thorough factual findings in relation to each factor. The *1120 record supports those findings. For the first ten years of the marriage, the couple's standard of living was modest and frugal. Their income did not increase significantly until the last twenty-one months of their marriage. Based on the unrebutted testimony concerning the circumstances that would adversely affect the Wife's medical practice, the trial court found that the Wife could not maintain the Husband in the lifestyle he enjoyed for less than two years.
The trial court concluded that the duration of the marriage was twelve-and-a-half years, a gray-area marriage where there is no presumption in favor of permanent periodic alimony. See Gregoire v. Gregoire, 615 So.2d 694, 694 (Fla. 2d DCA 1992). The couple had no children. The Husband worked full time throughout the marriage and the Wife paid for her medical school with significant loans, for which only she was responsible. Both parties contributed equally to homemaking.
The Husband and the Wife were relatively young and healthy. Each was a successful professional with a bright future. The Husband worked in his chosen occupation throughout the marriage. He held a college degree and, as the trial court found, had a bright future with tremendous potential as a head coach with an NCAA basketball program. The trial court found credible the Wife's evidence that her net current income was $5800 per month. The Husband's monthly net income was $2600.
The Husband received an equitable distribution of $250,000 for his interest in the marital home and $7500 for his interest in the Wife's medical practice. The trial court awarded the Husband bridge-the-gap alimony[2] of $22,800. However, the trial court refused to award the Husband permanent periodic alimony.
We review the denial of alimony for an abuse of discretion. Doerr v. Doerr, 751 So.2d 154, 155 (Fla. 2d DCA 2000). We agree with the trial court that this was a gray-area marriage to which no presumption in favor of alimony attaches. See Gregoire, 615 So.2d at 694 (regarding eleven-year marriage); Levy v. Levy, 862 So.2d 48, 51 (Fla. 3d DCA 2003) (regarding fourteen-year marriage); Young v. Young, 677 So.2d 1301, 1305 (Fla. 5th DCA 1996) (regarding fifteen-year marriage). The Husband does not dispute this principle. Yet, he argues that Gregoire, 615 So.2d 694, and Young, 677 So.2d 1301, compel his entitlement to alimony.
In Gregoire, we affirmed an award of permanent alimony in an eleven-year marriage with two minor children. The trial court found that the husband's achievement of substantial income-earning ability was directly attributable to the wife's financial support in the early years of the marriage when the husband's income was minimal. 615 So.2d at 695. Significantly, the wife also had sacrificed her career permanently to become a full-time homemaker. Id.
In Young, the Fifth District reversed the denial of permanent periodic alimony. The wife made career sacrifices and endured personal hardships while the husband attended medical school. The couple enjoyed a high standard of living during the last third of their fifteen-year marriage. 677 So.2d at 1303-04. The Fifth District held that the eight-to-one disparity between the husband's and wife's incomes was "`a significant factor' in deciding whether permanent or temporary alimony is warranted." Id. at 1306 (quoting Reynolds v. Reynolds, 668 So.2d 245, 247 (Fla. 1st DCA 1996)).
The Wife relies on Kremer v. Kremer, 595 So.2d 214 (Fla. 2d DCA 1992). There, *1121 we reversed the trial court's award of permanent alimony to the wife in a six-year childless marriage. Id. at 215. The wife supported herself before the marriage, was employed during the marriage, was thirty-seven at the time of dissolution, and could currently earn $20,000 to $25,000 per year with the prospect of earning $30,000-$35,000 annually within five years. Id. The husband earned $210,000 per year. Id. We concluded that the wife was not entitled to permanent alimony because there was "no showing that the disparity between the husband's and the wife's assets and income after the dissolution resulted in any substantial way from the [wife's contribution to the] marriage." Id. The wife left the marriage with no skills lost and considerably wealthier than before the marriage. Id.
This case is akin to Kremer. The disparity in the parties' incomes is not dispositive under section 61.08. In any event, based on the trial court's findings, the Husband's monthly income was over forty percent of the Wife's, hardly the disparity described in Young. Like the wife in Kremer, the Husband did not abandon his career or endure undue hardship. He coached at the collegiate level for most of the marriage, his annual income steadily increased, and his post-dissolution prospects were promising. He received a considerable sum as part of the equitable distribution of marital assets. Based on the record before us, we cannot say that the trial court abused its discretion in denying permanent periodic alimony.
Affirmed.
NORTHCUTT, C.J., and SILBERMAN, J., Concur.
NOTES
[1] In 2006, Medicare expanded national coverage of bariatric surgery to Medicare and Medicaid recipients up to 65 years of age if performed at a facility approved as a Center of Excellence by the American Society for Bariatric Surgery (ASBS) or the American College of Surgeons (ACS). The ASBS and the ACS both require that the hospital perform a minimum of 125 bariatric surgeries per year. Shawn Garber, "Much Ado about Medicare's Ruling and Centers of Excellence," Bariatrics Today, Issue 1, 2006, at 29-30 (2006) (Wife's Exhibit 24).
[2] Such relief is "an award of rehabilitative alimony in order to `bridge the gap' between married and single life." Borchard v. Borchard, 730 So.2d 748, 753 (Fla. 2d DCA 1999).