668 So.2d 245 (1996)
Nancy Ann REYNOLDS, Appellant,
v.
Michael Patrick REYNOLDS, Appellee.
No. 95-1259.
District Court of Appeal of Florida, First District.
February 15, 1996.
*246 Alice Cano, Fort Walton Beach, for Appellant.
No brief filed, for Appellee.
MICKLE, Judge.
Nancy A. Reynolds, the former wife, appeals from a final judgment of dissolution of marriage. We reverse and remand for the trial court 1) to order child support in the presumptive amount set forth in section 61.30(6), Florida Statutes (1993), or else to make explicit findings of fact to support its downward deviation from the support guidelines and 2) to reconsider the issue of alimony and to make specific findings of fact in support of its ruling. § 61.08(1), Fla.Stat. (1993).
Two children were born during the parties' eleven-year marriage. In her petition to dissolve the marriage, the appellant requested support for the two minor children. The child support guidelines presumptively establish the amount to be ordered as child support. § 61.30(1)(a), Fla.Stat. (1993). Michael P. Reynolds, the former husband, is employed by the United States Air Force on active duty status as an "E-6 Tech/Sgt," and has a total monthly income of $2,529.30 (net income: $2,152.11), according to his amended financial affidavit. The former wife, an assembler earning $5.00 per hour at a manufacturing company, listed her total monthly income as $866.00 (net income: $769.75). The appellant testified that two months was the longest period she had worked outside the home during the marriage, and $5.00 was her highest hourly wage.
To calculate the presumptive child support amount, the guidelines require a determination of the parents' "combined monthly available income." § 61.30(6). Given the parties' combined available monthly income between $2,900.00 and $2,950.00, the guidelines provide that the presumptive total "minimum child support need" for two children ranges from $971.00 to $986.00 a month. § 61.30(6). For purposes of determining each parent's percentage share of the child support need, the division of each parent's net income by their combined net income produced respective shares of 26% and 74% for the appellant and the appellee. § 61.30(9). Our calculations indicate that the appellee's 74% share, within the support range ($971.00 to $986.00), equals from $718.54 to $729.64.
The guidelines also take into account certain child care costs. § 61.30(7). The former wife testified that her additional child care expenses amounted to $405.00 monthly. The statute provides that "[c]hild care costs incurred on behalf of the children due to employment, job search, or education ... shall be reduced by 25 percent and then shall be added to the basic obligation." § 61.30(7). Reduced by 25%, the $405.00 a month equals $303.75, of which the former husband's presumptive 74% share equals $224.77. Thus, the former husband's presumptive support and child care obligation would range from about $943.31 to $954.38.
The guidelines statute permits the trial court to adjust the minimum support amount (or either or both parents' share thereof) based on considerations enumerated in section 61.30(11)(a)-(k), Florida Statutes. The statute allows the trial court to order payment of child support that varies, plus or minus 5%, from the guideline amount, without findings of fact. However, if the trier of fact orders payment of support in an amount that varies more than 5% upward or downward from the guideline amount, the court must include a written finding, or make a *247 specific finding on the record, "explaining why ordering payment of such guideline amount would be unjust or inappropriate." § 61.30(1)(a).
In the final judgment, the trial court ordered the former husband to pay the former wife $630.00 a month for child support for 24 months subsequent to entry of judgment. Beginning with the 25th month, the former husband was ordered to pay $768.00 a month. As additional support pursuant to statutory subsection (7), the trial court ordered the former husband to pay the appellant 70.1% of the child-care expenses (reduced by 25%).
The amount awarded for child support during the first 24 months post-judgment represents more than a 5% downward deviation from the presumptive guideline amount. Therefore, the trial court was required to make findings under statutory subsection (1)(a). The final judgment expressly states that the departure amount was intended "to provide the Respondent/Husband relief while he satisfies a large sum of familial obligations."
In Issue I, the appellant submits that given the uncontroverted testimony demonstrating that at least $9,000.00 of the former husband's credit card debts were incurred after the date of the parties' separation, a more detailed explanation was required as a matter of law. We agree. Riley v. Parker, 624 So.2d 828 (Fla. 1st DCA 1993). In Riley, the trial court ordered the former husband to pay only ¼ of the presumptive guideline support amount upon finding that after his "other financial obligations" were considered, the former husband could afford to pay no more than the amount awarded. We concluded that this explanation was inadequate as a matter of law to meet the requirements of statutory subsection (1)(a). Id.
The instant judgment does not indicate what, or how much, the appellee's "familial obligations" are, nor does it suggest to what extent the substantial debts listed in the record represent his own personal expenses, as opposed to debts incurred for the support and care of the appellant and their children. In fairness to the able trier of fact, we note that the evidence presented below by the parties as to the type and amount of their pre- and post-separation expenditures was anything but clear. This much is apparent from the record, however. The former wife alleged, and the former husband admitted in his answer, that the parties had debts totaling about $27,000.00 when they separated in April 1994. By the date of the January 1995 hearing, substantial additional debts were incurred. The former husband's amended 1995 financial affidavit listed total liabilities of $46,237.99. Given the inconsistencies in the record regarding the nature and amount of the parties' post-separation expenditures, we believe that more detailed findings are required to explain the specific basis for the court's departure from the presumptive support amount. These directions assume, of course, that on remand the trial court elects to deviate from the guidelines. Touchstone v. Touchstone, 579 So.2d 826 (Fla. 1st DCA 1991) (reversing final judgment and remanding for findings to explain departure from minimum guideline amount). However, we offer no opinion as to the appropriate result on remand. We find no abuse of discretion in the awarding of tax exemptions for the children to the former husband through 1999. § 61.30(11)(i).
In Issue II, the appellant argues that the court abused its discretion in awarding her only $103.00 a month for rehabilitative alimony for twelve months, and in failing to award permanent alimony. We conclude that the final judgment is deficient for lack of explicit findings to support either the award of rehabilitative alimony or the failure to award permanent alimony. § 61.08(1), Fla. Stat. (1993) (requiring findings of fact to support an alimony determination). The law is clearly established that the disparate earning capacity of the parties is "a significant factor" in deciding whether permanent or temporary alimony is warranted. Zeigler v. Zeigler, 635 So.2d 50, 54 (Fla. 1st DCA 1994); Greeley v. Greeley, 583 So.2d 1078 (Fla. 1st DCA 1991).
The record demonstrates that the former husband's net income is nearly three times that of the former wife, that her employment history outside the home has been very limited, and that she has never earned more than *248 $5.00 an hour. The appellant contributed significantly to the marriage by rendering homemaking services, which effectively prevented both her education beyond high school and her career advancement, while the appellee was able to further his education and employment prospects. Like the 13-½-year marriage in Zeigler, the parties' 11-year marriage is neither short- nor long-term, "but rather falls in the grey area where a determination of entitlement to permanent alimony will be decided based upon a review of the other pertinent factors [set forth in section 61.08, Florida Statutes] without the benefit of a presumption in favor or against permanent alimony." Id.
As was true in Collinsworth v. Collinsworth, 624 So.2d 287 (Fla. 1st DCA 1993), the trial court apparently wanted to provide for the appellant's rehabilitation, yet the final judgment lacks specific findings relating to 1) a rehabilitative plan and objective for the former wife, 2) the costs of the plan, and 3) any other factual basis for the anticipated period of time needed to achieve rehabilitation and self-support. Id. at 291. As in Zeigler, we remand for the trial court 1) to assess the appellant's prospects of approaching the marital standard of living, 2) to reconsider the denial of permanent alimony, and 3) to make the requisite findings of fact relative to the other statutory factors enumerated in section 61.08(2), Florida Statutes (1993). § 61.08(1); Collinsworth, 624 So.2d at 291 (award of rehabilitative alimony was legally deficient where final judgment lacked explicit findings to support the award); Zeigler, 635 So.2d at 53-55.
In the event the lower court finds that only rehabilitative alimony is justified, then we direct it to make statutory findings in support of the amount and duration of such award. § 61.08(1); Collinsworth; Pardue v. Pardue, 518 So.2d 954 (Fla. 1st DCA 1988) (award of $200.00 a month for rehabilitative alimony to the former wife for two years to allow her to complete college constituted an abuse of discretion, where she would be unable to complete her education within that period if required to work during the rehabilitative period).
REVERSED and REMANDED for further consistent proceedings.
WEBSTER and LAWRENCE, JJ., concur.