693 So.2d 1080 (1997)
Donald A. STOCK, Appellant/Cross-Appellee,
v.
Katherine L. STOCK and Michael J. Egan and Doris Y. Egan, Appellees/Cross-Appellants.
No. 95-04500.
District Court of Appeal of Florida, Second District.
May 16, 1997.
*1082 Nelson A. Faerber, Jr., of Faerber, Hissam, Cliff & Perez-Benitoa, Naples, for Appellant/Cross-Appellee.
Suzanne D. Lanier, of Richman, Deifik, Lanier and Ross, P.A., Naples, for Appellees/Cross-Appellants.
NORTHCUTT, Judge.
In this dissolution of marriage action, the trial court shouldered the unenviable duty of untangling the parties' relatively complicated financial affairs and then equitably apportioning their resources and responsibilities. All-in-all, the court performed quite well. Unfortunately, as is often the case, the parties' wealth did not match the complexity of their finances. Both the husband and the wife feel shortchanged, and both have appealed the final judgment.
The husband challenges the lower court's reservation of jurisdiction to award alimony to the wife, its requirement that he share in the expense of maintaining the children's horses, and the court's failure to compensate him for the wife's transfer of a parcel of real estate referred to as the Curlew property. In her cross appeal, the wife disputes the court's allegedly unequal distribution of marital assets and liabilities, its failure to award her a credit for marital mortgage payments she made during the parties' separation, and the court's refusal to require the husband to pay temporary child support arrearages. We affirm in part and reverse in part.
The court accurately determined that the wife was entitled to alimony, but that the husband's ability to pay was limited due to his child support obligations. Therefore, it reserved jurisdiction to consider the husband's earning ability and his ability to pay alimony in the future as each child's emancipation reduces his child support obligation. The husband argues that it is error to order an automatic future increase in alimony. Kinzler v. Kinzler, 497 So.2d 909 (Fla. 5th DCA 1986). However, the court here did not direct that a specific alimony award commence in the future, but merely reserved jurisdiction to make that determination at a later time. The question whether to reserve jurisdiction to award alimony in the future lies within the court's discretion. Shaw v. Shaw, 334 So.2d 13 (Fla.1976); Strahan v. Strahan, 605 So.2d 1316 (Fla. 4th DCA 1992); Roy v. Roy, 522 So.2d 75 (Fla. 4th DCA 1988). Here, the evidence shows a likelihood that there will be a change in circumstances that would enable the husband to meet his obligation to contribute to the wife's support. That being the case, the trial court correctly reserved jurisdiction for that purpose. Roy, 522 So.2d at 76. We affirm on this point.
We conclude, however, that the court either should not have directed the husband to contribute to the expense of maintaining the children's horses, or should have made a *1083 more specific finding to support the award. The final judgment established the husband's basic child support obligation at $1,000 per month pursuant to the statutory child support guidelines and based on his sixty-one per cent share of the parties' combined monthly income. In addition, the husband was ordered to pay his proportionate share of the $300 monthly expense to maintain the children's horses. Thus, the total of these two aspects of the husband's child support obligation was $1,183, an 18.3 per cent variance from the amount prescribed by the statutory guidelines.
Section 61.30(1)(a), Florida Statutes (1995), provides that "[t]he trier of fact may order payment of child support in an amount which varies more than 5 percent from [the] guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate." Lotz v. Lotz, 686 So.2d 704 (Fla. 2d DCA 1996); Stewmon v. Stewmon, 654 So.2d 259 (Fla. 2d DCA 1995). Here, the court justified the variance merely by noting that the children were involved in 4-H Club activities and citing section 61.30(11)(f). That provision allows a trial court to adjust the minimum child support award, or either or both parents' share of it, to accommodate "[s]pecial needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines."
Certainly, the children's longstanding involvement in an extracurricular activity qualifies as a special need, and properly forms the basis for a discretionary departure from the child support guidelines, under that statutory provision. But when the resulting child support obligation exceeds the guideline amount by more than five per cent, section 61.30(1)(a) requires the trial court to make specific findings explaining why it would be unjust or inappropriate to adhere to the guidelines notwithstanding that such might preclude the children from having one or more of their "special needs" met. In other words, the presence of a special need for purposes of section 61.30(11)(f) does not, in itself, satisfy the requirement for findings under section 61.30(1)(a). See Lotz, 686 So.2d at 705 (reversing where, although trial court recited factors for which section 61.30(11) permits adjustments of child support guideline amount, trial court did not make specific findings to explain why ordering payment of the guideline amount would be unjust or inappropriate).
The latter necessarily involves assessing the importance of the subject need in light of all other relevant circumstances. For instance, while a court might in its discretion conclude that it would be unjust or inappropriate to forego meeting a child's relatively minor special need if the parents could easily afford to pay for it, poorer financial circumstances might well justify allowing the same need to go unmet. By the same token, of course, a court could find that it would be unjust not to compel the parents to meet an important special need even if doing so would impose a heavy financial burden.
In the Stocks' case, the record reflects that the children were, indeed, active in the 4-H Club, and that the attendant expense had traditionally been met within the family budget. However, the record also discloses that the parties had lived above their means during the marriage, and had enlisted substantial financial support from the wife's parents, the Egans. Both the husband and the wife leave their union in financial straits. Both have been given responsibility for marital indebtedness that will severely strain their modest incomes and assets. Under all the circumstances, the $300 monthly expenditure on the children's horses is a significant one that the parties can ill afford to make. That being the case, the judgment's simple reference to the fact that the children's 4-H Club involvement constituted a special need within the meaning of section 61.30(11)(f) was insufficient to justify a variance from the statutory guideline amount. See Lotz, 686 So.2d at 705; Reynolds v. Reynolds, 668 So.2d 245, 247 (Fla. 1st DCA 1996)(reference to the husband's other debts, a factor permitting adjustment of the guideline amount under section 61.30(11)(k), was insufficient to justify a variance of more than five per cent under section 61.30(1)(a)); Chapoteau v. Chapoteau, 659 So.2d 1381, 1385 (Fla. 3d DCA *1084 1995)(blanket statement regarding the difference in the costs of living in Germany and the United States was insufficient to explain variance from guideline amount under section 61.30(1)(a)).
That said, we note evidence in the record that might have supported a finding that it would be unjust or inappropriate to discontinue the children's involvement with horses even in light of their parents' relative lack of means. The parties had owned horses for seven years prior to the divorce. The wife testified that the daughters' horses were their "whole life." The girls were reacting poorly to the dissolution of their family, and their therapist opined that any further changes in their lives would be detrimental to their emotional health.
Although the foregoing factors would have justified a variance from the child support guidelines under section 61.30(1)(a), we resist the temptation to surmise that the trial court relied on factors that it did not specify in the finding required by the statute. It is beyond our authority to weigh and evaluate the evidence which possibly supports the award, for to do so would usurp the discretion and factfinding role that the legislature has expressly vested in the trial court. For purposes of appellate review, and for purposes of future modification proceedings, the statutory requirement that the trial court articulate its rationale for departing more than five per cent from the child support guidelines is an important one. Therefore, we remand with directions that the court either delete the requirement that the husband contribute to the cost of maintaining the children's horses, or make more specific findings to explain why it would be unjust or inappropriate to adhere to the child support amount called for by the guidelines. Reynolds, 668 So.2d at 247.
In his final issue, the husband argues that the trial court erred in finding that the Curlew property was not a marital asset available for equitable distribution because the wife had previously transferred the property to Doris Egan, the wife's mother. He contends the court failed to consider the issue of the wife's allegedly fraudulent conveyance or dissipation of a marital asset. The wife concedes that the property could have been deemed a marital asset at the time of its conveyance, but she points to an array of facts concerning the assumption of mortgage debt and the payment of taxes by Mrs. Egan that compel the conclusion that the marital estate received more than ample consideration for the property.
There is substantial record support for the wife's contention that she did not dissipate this asset. Rather, in an effort to consolidate and reduce the parties' debts, she transferred the property in exchange for the forgiveness of marital indebtedness which, in sum, exceeded the value of the Stocks' equity in the property. Had she not done so, the husband's share of the affected liabilities would have exceeded the value of his interest in the property by about $11,000.
Be that as it may, the question whether a conveyance or expenditure constitutes a dissipation of marital property does not turn on whether the transaction actually worked to the parties' financial advantage. Rather, to warrant an unequal distribution of marital assets under section 61.075(1)(l), Florida Statutes (1995), a party's conduct must constitute "intentional dissipation, waste, depletion, or destruction" of a marital asset. (Emphasis supplied.) Simple mismanagement of the family finances does not qualify. Cornell v. Smith, 616 So.2d 629 (Fla. 4th DCA 1993). Inherent in the trial court's treatment of the Curlew property was its conclusion that the wife had committed no misconduct in regard to that asset, and the evidence fully supported that view. Accordingly, we affirm on this issue.
The wife contends that the marital assets and liabilities were inequitably divided. With the exception of one aspect of the disposition, we disagree. The parties' two most significant assets were their interests in a real estate parcel known as the Davila property, and in a closed corporation named Naples Riding Academy, Inc. At the Stocks' behest, the Egans had joined in and funded the purchase of the Davila property in 1988. Each couple owned an undivided fifty per cent interest in the property. The Stock family took up residence there, and constructed *1085 stables and other equine-related amenities. These improvements were leased to the above-mentioned corporation, which the Stocks and Egans formed to operate a horse boarding and riding academy business. The husband and wife each owned forty per cent of the corporation's stock, and the Egans held the balance. The wife managed the business. At the time of the final hearing, she derived her income from lease payments made by the corporation.
The trial court awarded the parties' interest in Naples Riding Academy, Inc., which the court valued at $3,990, to the wife, and assigned to her sole responsibility for related debts totalling $18,797.67. The record reflects that these figures were taken from an exhibit listing both the liquidation values of the corporate assets, and the corporate obligations.
The court found that the Davila property was worth $290,000. It was encumbered by mortgages in approximately the same amount. The parties were left as tenants in common in the property, each with an undivided twenty-five per cent ownership. However, as an aspect of child support, the court granted the wife exclusive possession of the property until the parties' youngest child attained majority or graduated from high school.
Commensurate with their fractional interests in the Davila property, the husband and wife were each made responsible for twentyfive per cent of the property expenses. The court ordered that in the event the husband did not pay his full share of the expenses, the wife and the Egans would receive appropriate credits against the net proceeds from the future sale of the property. The judgment also granted the husband a setoff against his property expense obligation equal to onequarter of the lease payments made by Naples Riding Academy, Inc. or any future tenant.
The parties' remaining assets, consisting of furniture, vehicles, and miscellaneous personalty, were of modest value, and were exceeded by marital indebtedness. The trial court divided them, and apportioned the debts evenly, allowing credits for payments made by one party or the other since their separation.
The wife's contention that she was shortchanged by the division of assets and liabilities is premised on her belief, which she expressed at the final hearing, that Naples Riding Academy, Inc.'s status as a subchapter S corporation for federal income tax purposes renders its shareholders personally liable for the corporation's debts. Thus, in her view, the value of her overall share of the marital estate is reduced by her eighty per cent share of the corporation's negative net worth.
The wife is mistaken. That Naples Riding Academy, Inc. is a subchapter S corporation does not diminish its shareholders' insulation from liability for the corporation's debts. See Ally v. Naim, 581 So.2d 961 (Fla. 3d DCA 1991). The negative liquidation value of the corporation made no impact on the wife's percentage share of the marital assets and liabilities. That being the case, the equitable distribution ordered by the trial court actually favored the wife.
Still, there is one aspect of the trial court's distribution scheme that troubles us, that being the award to the husband of an undivided fractional interest in the Davila property, along with a commensurate interest in the rents paid by Naples Riding Academy, Inc., to be applied as a setoff against his share of the Davila property expenses. Although we do not disagree with this approach in concept, we note that the rents were being employed by the wife for living expenses, in compensation for her management of the horse stables and riding academy. This was by far the largest source of the income attributed to the wife for purposes of calculating the husband's child support obligation pursuant to sections 61.30(9) and (10). Thus, a portion of the income that was charged to the wife for child support purposes was actually awarded to the husband in the equitable distribution scheme. Such rendered the child support calculation erroneous. Therefore, we reverse this aspect of the final judgment. On remand, the trial court may exercise its discretion to again divide the Davila asset and rental income as it did before. If so, however, the court must recalculate the husband's monthly child support obligation after adjusting the parties' respective incomes accordingly.
*1086 The wife also challenges the lower court's refusal to award her a credit based on her payment of Davila mortgage expenses during the parties' separation. Reimbursement or credit for a party's payment of marital property-related expenses during separation is a matter of judicial discretion in light of all relevant circumstances. Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993). We cannot conclude that the trial court abused its discretion in this regard. Similarly, the wife complains that the trial court did not order the husband to reimburse her for children's medical expenses that were his partial responsibility under the temporary child support order. The temporary support order required the husband to reimburse her for seventy per cent of the medical expenses until further court order. During the separation, the wife paid $1,919.44 in medical expenses. We note that an order allowing temporary support is interlocutory in character and remains within the control of the court at least until entry of the final decree. Moliver v. Moliver, 200 So.2d 613 (Fla. 3d DCA 1967). However, at a minimum, these expenses are marital debts and should be equitably distributed as such. We, therefore, instruct the trial court to reconsider this marital debt for the children's medical expenses as a part of the entire equitable distribution scheme.
Affirmed in part, reversed in part and remanded for further proceedings.
ALTENBERND and BLUE, JJ., concur.