**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0711-15T3

WILLARD F. WEIKEL, CPA,

Plaintiff-Respondent,

v.

LISA HARRIS, n/k/a,
LISA BAILEY,

Defendant/Third-Party
Plaintiff-Appellant,

v.

ROBERT HARRIS,

Third-Party Defendant.

---

Submitted December 22, 2016 – Decided June 6, 2017

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Special Civil Part, Camden County, Docket No. DC-5195-15.

Obermayer Rebmann Maxwell & Hippel, LLP, attorneys for appellant (Shari B. Veisblatt and Amanda W. Figland, on the brief).

Garofalo & O'Neill, P.A., attorneys for respondent (William S. Ruggierio, on the brief).

PER CURIAM

Defendant Lisa Bailey appeals from a Special Civil Part judgment entered against her and in favor of plaintiff Willard F. Weikel, C.P.A., in the amount of $11,155. Following our review of the record and applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I

We derive the following from the record and the evidence adduced during the bench trial. In April 2015, after over twenty years of marriage, Bailey and third-party defendant Robert Harris divorced. During the course of their marriage, Harris was the owner and president of a Subchapter S corporation known as Family Limousine, II, Inc. (Limo). Although Bailey was at times an employee of Limo, there is no evidence she was ever an officer or shareholder of this entity.

In 2009, plaintiff, a certified public accountant, commenced providing accounting services for the business, as well as for Bailey and Harris (couple) personally. By that time, the business had failed to file income tax returns and other essential documents with the taxing authorities for three years. Plaintiff prepared the necessary documents for Limo to

file. Limo then closed in January 2010, but, in an ongoing effort to straighten out Limo's accounting and file the appropriate documents with both the IRS and the State of New Jersey, plaintiff provided services for Limo's benefit through 2014. Plaintiff also prepared the couple's and their two adult children's income tax returns for calendar years 2009 through 2013. Although he periodically provided invoices to Limo and the couple, plaintiff's bill went unpaid.

In 2014, Bailey filed a complaint for divorce. Aware the couple was divorcing, plaintiff pressed Bailey and Harris separately for payment, billing each one-half of the total fees both Limo and the couple owed to him. Plaintiff settled with Harris for an undisclosed amount. However, unsuccessful in obtaining any payment from Bailey, plaintiff filed a complaint against her in the Special Civil Part seeking the recovery of his entire bill against Limo and the couple. The bill was $19,400.[1]

In his complaint, among other things, plaintiff alleged breach of contract. It is undisputed plaintiff and Bailey did not enter a written contract, but plaintiff testified he entered

[1] Despite seeking $19,400 from Bailey, in his complaint, plaintiff acknowledged he could not recover more the $15,000 monetary limit permitted in the Special Civil Part. See R. 6:1-2(a)(1).

into a verbal agreement with the couple to provide accounting services. In the alternative, he sought the recovery of his fees under the equitable theory of quantum meruit. In turn, Bailey filed a third-party complaint against Harris, seeking indemnification in the event she were found liable to plaintiff.

During the trial, plaintiff acknowledged that, on May 14, 2010, both Limo and the couple filed for bankruptcy relief; the debts of both Limo and the couple were ultimately discharged. Plaintiff clarified he sought to recover only those fees for services provided to Limo and the couple after May 14, 2010; in the aggregate, those fees were $12,595. In his invoices, plaintiff did not completely separate the fees he charged Limo from those he charged the couple.

Plaintiff testified Bailey had been employed as a bookkeeper for Limo in 2007 and 2008, and that Harris was the president. Although he was the accountant for Limo, plaintiff did not identify who the shareholder or shareholders were to this Subchapter S corporation.

Harris testified it was he who requested plaintiff to provide "accounting services" for Limo, including that he prepare "returns" for Limo and "satisfy corporate filings." Harris did not testify about his relationship to Limo, but noted Bailey worked in the business as a bookkeeper and driver, as

well as "a little bit of everything." Harris did not testify Bailey was a shareholder in the corporation.

Bailey testified she had last worked for Limo in 2003, but on cross-examination admitted she received unemployment compensation in 2010 for having been laid-off from Limo. However, she never stated or provided any evidence she had been a shareholder of the corporation. She did testify Harris was the "owner" of Limo, and that it was he who retained plaintiff to provide accounting services for Limo.

Although the trial court explicitly stated it did not know the "ownership status" of or who was a shareholder in Limo, the court nevertheless found Bailey responsible for the services plaintiff provided to Limo, because this entity was a small, family-run business. The court stated:

> This was a closely-held Sub-S corporation. Nobody told me what the ownership status was or who was a shareholder, who wasn't a shareholder, but it was a family op – it was – well, it was called, "Family Limo"; I mean, it's kind of what you refer to as a, "Mom-and-Pop Operation." It's a small business with, you know, few employees with, you know, the people apparently [Bailey and Harris] doing the work.
>
> And I don't know what [Bailey's] stated ownership interest in it was, but in this type of closely-held situation -- it's not like we're doing corporate returns for, you know, IBM or – or any, you know, major company; this is a small closely-held

> company – even if Mr. Harris is a hundred-percent shareholder, that's not the way it's going down, you know, in terms of how they're actually dealing with the matter.

Without expressing employing the term "quantum meruit," the court essentially applied this doctrine and found Bailey responsible for the services plaintiff rendered to Bailey and Harris for their personal financial matters. The court stated:

> [A] lot of work [was] done on joint returns . . . . And, not only that, every year on the joint returns when the whole package is put together, nobody – Ms. – Ms. Bailey never told me, "I didn't sign [the return]; I refused to sign it because I didn't hire this guy; I didn't want him doing the work; he was charging too much; I didn't want it to happen." She never said that.

For reasons not relevant to any issue on appeal, the court deducted $1440 from the $12,595 plaintiff sought in damages, and concluded the amount owed to him was $11,155. The court entered a judgment for this amount against Bailey and in plaintiff's favor. The court also dismissed Bailey's third-party complaint against Harris without prejudice, finding the allocation of this marital debt between Bailey and Harris should be handled by the Family Part.

## II

On appeal, Bailey contends the trial court erred by finding (1) she was responsible for Limo's debts; (2) there was a

binding contract between her and plaintiff to pay for all of his fees; and (3) she was responsible for plaintiff's fees on a theory of quantum meruit. Bailey also claims the court erred by dismissing her third-party complaint against Harris.

Factual findings of the trial court are granted deference unless "they are so wholly insupportable as to result in a denial of justice[.]" Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div.), aff'd o.b., 33 N.J. 78 (1960)). Thus, an "appellate court should exercise its [] fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Id. at 484. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," and are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We readily dispose of the contention the court erred when it found there was a binding contract between her and plaintiff. The court did not make this finding. After determining Bailey was responsible for Limo's debts on the ground Limo was a small, family-run operation, the court found plaintiff entitled to

recover his fee from Bailey on the theory of quantum meruit, not breach of contract.

We turn to what we view as the principal contention, whether Bailey is responsible for Limo's debts. Our Supreme Court has recognized it is a "fundamental proposition[] that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." State Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983) (citing Lyon v. Barrett, 89 N.J. 294, 300 (1982)). In order to overcome the separation of a corporation from its shareholders or members for purposes of imposing liability, there must be proof the "corporate veil" should be pierced "to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Ibid. (citations omitted).

Here, there is no dispute Limo was a corporation, albeit a Subchapter S corporation, a kind of corporation "formed to take advantage of the tax treatment provided by Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361 et seq." Carter v. Anderson (In re Carter), 182 F.3d 1027, 1028 n.1 (9th Cir. 1999). However, "[w]hile an S corporation is treated differently for taxation purposes, it remains a corporation in

all other ways, and it and its shareholders are separate entities." Smith Setzer & Sons v. S.C. Procurement Review Panel, 20 F.3d 1311, 1318 (4th Cir. 1994).

A Subchapter S corporation's similarity to a corporation includes that a Subchapter S shareholder is not at risk for being responsible for corporate debt. "Subchapter S permits small businesses, or S corporations, to receive the 'non-tax advantages of incorporation such as . . . insulation from personal liability[.]'" Tarrant v. Dep't of Taxes, 733 A.2d 733, 737 (Vt. 1999) (quoting Cohen v. Colo. Dep't of Revenue, 593 P.2d 957, 959 (Colo. 1979)). A shareholder's insulation from the debts of a corporation is not in any way affected if a corporation is organized in compliance with the provisions of Subchapter S. Stock v. Stock, 693 So. 2d 1080, 1086 (Fla. 1997).

Here, there is no evidence Bailey was a shareholder, let alone a finding it was necessary to pierce the corporate veil to hold her accountable as a shareholder for a wrong committed. At best, Bailey was an employee, and there is no contention her status as employee created liability for Limo's debts." Therefore, that portion of the judgment attributable to the fees plaintiff charged to provide services to Limo are not Bailey's responsibility. Because the evidence does not enable us to

determine which part of the judgment is for fees incurred to provide services to Limo, we must vacate the judgment and remand this matter to the trial court so that it can make this finding and enter an amended judgment.

We find no error in the trial court's finding Bailey is liable to plaintiff for the fees he charged to provide services for her and Harris in connection with their personal finances. The court properly applied the doctrine of quantum meruit to this matter. To recover under this doctrine, a claimant must show proof of "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Starkey v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002) (quoting Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994) (citations omitted)).

Plaintiff has met this test. There is no question he performed accounting services for Bailey (and Harris) with respect to their personal finances in good faith; Bailey accepted these services; and these services were rendered in the expectation plaintiff would be compensated. Finally, Bailey does not challenge the value of the services rendered.

Last, we are in accord with the trial court's decision to dismiss without prejudice Bailey's third-party complaint. Most,

if not all, of the subject debt was incurred during the marriage. At the time of divorce, not only are the parties' assets subject to equitable distribution, but their debts are subject to allocation. See Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986). We are informed neither Bailey nor Harris included plaintiff's debt on the Case Information Statements each filed in the divorce action, and neither considered such debt when they settled that matter. How the debt to plaintiff is to be allocated between Bailey and Harris must be handled in the Family Part. See R. 5:1-2(a) ("[A]ctions in which the principal claim is unique to and arises out of a family or family-type relationship shall be brought in the Family Part.").

In summary, the judgment for $11,155 is vacated and this matter is remanded to the trial court for further proceedings to determine what fees are attributable to the services plaintiff rendered to Limo, including but not limited to preparing the general ledgers for the corporation and any tax returns or other documents filed with the taxing authorities. Those fees for services plaintiff rendered to Bailey and Harris with respect to their personal finances shall then be reduced to a judgment. Finally, plaintiff's motion to strike Bailey's brief and appendix, and to impose sanctions, is denied.

Affirmed in part, reversed in part, and remanded for further proceedings in conformance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION