DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FRANK LEYTE-VIDAL,**
Appellant,

v.

**VERONICA LEYTE-VIDAL,**
Appellee.

No. 4D21-879 & 4D21-1468

[October 26, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nickolaus Hunter Davis, Judge; L.T. Case No. FMCE18-1871.

Amy D. Shield and Roger Levine of Shield & Levine, P.A., Boca Raton, for appellant.

Ronald H. Kauffman and Raquel A. Lacayo-Valle of Ronald H. Kauffman, P.A., Miami, for appellee.

PER CURIAM.

This appeal arises from the marriage of Frank Leyte-Vidal, and his wife, Veronica Leyte-Vidal. The Husband appeals from a Final Judgment of Dissolution of Marriage ("final judgment") and a Final Judgment of Injunction for Protection Against Domestic Violence with Minor Child ("domestic violence injunction"). We affirm in part and reverse in part as to both the final judgment and the domestic violence injunction.

The parties are originally from Argentina and married there in 1992. Shortly after they married, they moved to the United States. At the time the final hearing began, the Husband was 48 years old and the Wife was 47 years old. They have an adult son and a minor daughter.

The Husband is a pilot and has worked as an airline captain for a number of years.

The Wife was mostly a homemaker during the marriage. She has no degrees or vocational licenses. The Wife completed high school and then

attended college part time for one year. The Wife had not worked full time in more than 19 years. At the time of trial, the Wife was working part time at the child's school.

The Wife petitioned for dissolution of marriage in February 2018. The next month, the Husband's union entered into a new Collective Bargaining Agreement ("CBA") with his employer. The Husband's credit hours, including his flight hours, declined significantly in 2018. However, the Husband's income did not decline in 2018. The Husband's average gross income was $250,000 for the years 2015 through 2017, but the Husband earned about $326,000 in 2018, including a one-time contract-ratification bonus of about $79,000.

After trial, the circuit judge entered a detailed final judgment. The court also entered a domestic violence injunction. We affirm both judgments in all respects, except as specified below.

### The Husband's Income

The record does not support the trial court's finding that the Husband's income was $332,500. The Husband had never historically earned a recurring income of $332,500. The single year when he approached that figure he received a one-time, non-recurring signing bonus. "[I]t is error for the trial court to impute income to a spouse in an amount higher than the spouse has ever historically earned, absent special circumstances." *Tarnawski v. Tarnawski*, 851 So. 2d 239, 242 (Fla. 4th DCA 2003). A bonus must be "regular and continuous" before it can be included in a party's income for support purposes. *Rudnick v. Harman*, 162 So. 3d 116, 117 (Fla. 4th DCA 2014).

The $332,500 figure was based on the Wife's accounting expert's testimony that the Husband's credit hours should be consistent with his credit hours in 2016 and 2017, which would be approximately 1,400 hours per year. But this was merely an extrapolation based on speculation. As the Husband argues, the Wife's expert was testifying outside his field.

"The burden of proof is on the party seeking to impute income to the other spouse." *Huertas Del Pino v. Huertas Del Pino*, 229 So. 3d 838, 839 (Fla. 4th DCA 2017). Furthermore, an "expert cannot merely speculate; his opinion must have a factual basis." *Martinez v. Lobster Haven, LLC*, 320 So. 3d 873, 881 (Fla. 2d DCA 2021). Speculation is not competent, substantial evidence. *Smith v. Smith*, 872 So. 2d 397, 399 (Fla. 1st DCA 2004). For example, in *Sallaberry v. Sallaberry*, 27 So. 3d 234, 236 (Fla. 4th DCA 2010), we reversed the imputation of income to the husband

2

where the trial court's finding that the husband could bill his clients twenty hours per week amounted to speculation.

The Wife's expert admitted that he merely "took a passing look" at the 2018 CBA and that he "did not make specific findings" regarding the differences between the 2018 CBA and the prior CBA. His opinion was based upon deposition testimony from an airline employee who said that the 2018 CBA would not have made it more difficult for the Husband to bid on flights beyond his guaranteed 72 credit hours per month. But this does not prove that the Husband should have been earning 1,400 credit hours under the new CBA.

The Wife's expert's testimony was too speculative to establish that, if the Husband were acting in good faith to work as hard as he did during the intact marriage, he would be able to (1) fly the same number of hours as he did during the intact marriage, despite the added constraint of his timesharing schedule with the child, and (2) earn the same amount of "soft time" as he did under the old CBA, despite the new CBA's reduction in opportunities for premium flying and "pay protection." In other words, the Wife's expert's testimony did not establish that it was possible for the Husband to arrange a work schedule with the same number of flight hours he achieved during the intact marriage, *while also achieving the same number of soft hours that he achieved under the prior CBA*. A crucial point of the 2018 CBA was that pilots' hourly rates would increase, but their opportunities for soft time would decrease.

The Husband's witness, an airline pilot, had personal knowledge of how the 2018 CBA operated in practice. The witness testified that while 140 credit hours a month was possible under the old CBA, it was "difficult" and certainly "not guaranteed" to achieve 110 credit hours a month under the new CBA. By contrast, the final judgment required the Husband to achieve roughly 117 credit hours per month.

In sum, the Wife failed to meet her burden of proving the *reasonable* number of hours that the Husband should have been achieving under the new CBA. We therefore reverse the court's finding that the Husband was capable of earning $332,500 per year and remand for reconsideration of the alimony award based on the recurring gross income of $250,000 per year that he earned between 2015 and 2019.

### The Wife's Needs

In the absence of special circumstances, "an alimony award should not exceed a spouse's need." *Rosecan v. Springer*, 845 So. 2d 927, 929 (Fla. 4th DCA 2003).

Here, the trial court abused its discretion in awarding the Wife $6,500 per month in alimony when the Wife's own testimony established that her needs were roughly $6,000 per month. The testimony of the Wife's accounting expert to a higher figure was not based on competent substantial evidence, because some of the estimated "needs," such as $700 per month for health insurance, were without evidentiary support. On remand, the circuit court shall fix the Wife's need at $6,000 per month consistent with her testimony.

### Life Insurance

The final judgment ordered the Husband to maintain a life insurance policy of $500,000 for the benefit of the Wife for as long as he is required to pay alimony or child support. As the Husband argues, the final judgment "failed to include findings on the cost of the policy, policy availability, or impact of the policy on Husband."

"A trial court has the authority to order a party to obtain life insurance to secure the payment of alimony and child support." *Zvida v. Zvida*, 103 So. 3d 1052, 1054 (Fla. 4th DCA 2013). "However, the trial court must make specific evidentiary findings regarding the availability and cost of insurance, the obligor's ability to pay, and the special circumstances that warrant the requirement for security of the obligation." *Id.* (brackets and internal quotation marks omitted).

On remand, the trial court shall make the requisite findings regarding the Husband's life insurance obligation. The court may hear additional evidence to make such findings.

### Already-Paid Support

The parties agree that, after trial but before the entry of the final judgment, the Husband paid the Wife the $9,937.04 he owed in temporary support. The final judgment incorrectly reflects that this money is still owed. On remand, the final judgment should be corrected to remove any reference to the Husband owing the Wife a credit of $9,937 in unpaid support.

### *Child Support Must Be Recalculated*

We agree with the Husband that the trial court should have used the 2021 minimum wage to calculate the Wife's income, as that was the date of the final judgment.

By using the wrong year for the minimum wage, the trial court made a mathematical error in computing the Wife's income for child support purposes. The final judgment imputed full-time income to the Wife at the "prevailing" minimum wage. But the child support worksheet shows that the trial court relied upon the minimum wage from 2020 rather than the "prevailing" minimum wage in effect when the final judgment was entered in early 2021.[1] On remand, the trial court should recalculate the child support award based on the "prevailing" minimum wage in effect at the time of the final judgment.

We reject the Wife's argument that no error occurred because the trial court was free to vary the child support amount by 5% "irrespective of whether the correct year for minimum wage was used." Chapter 61 permits "[t]he trier of fact [to] order payment of child support which varies, plus or minus 5 percent, from the guideline amount, after considering all relevant factors[.]" § 61.30(1)(a), Fla. Stat. (2020). "The statute allows the trial court to order payment of child support that varies, plus or minus 5%, from the guideline amount, without findings of fact." *Reynolds v. Reynolds*, 668 So. 2d 245, 246 (Fla. 1st DCA 1996). Here, however, the trial court did not decide to deviate from the child support guidelines amount. Instead, the trial court simply miscalculated it.

As indicated above, no competent, substantial evidence supported a finding that the Wife should be paying $700 a month in COBRA health insurance in perpetuity.

The Husband presented uncontradicted evidence that the Wife should be spending a maximum of $120 per month on health insurance because the Wife's income from her employment would qualify her for subsidized health insurance under the Affordable Care Act. The Wife presented no evidence to support the reasonableness of a $700 per month cost for her health insurance.

---

[1] The child support worksheet indicates that the Wife's monthly gross income from salary or wages is $1,484, which reflects the 2020 minimum wage of $8.56 (i.e., $8.56 per hour x 40 hours per week x 52 weeks per year ÷ 12 months = $1,484).

On remand, the trial court should recalculate child support based upon a reasonable number for the Wife's monthly health insurance expense. Similarly, the child support calculation should take into consideration the Husband's cost for life insurance and a revised alimony figure. *See Henry v. Henry*, 191 So. 3d 995, 997–98 (Fla. 4th DCA 2016) (holding that miscalculation of parties' incomes required remand for recalculation of child support).

For these reasons, we reverse and remand the child support calculation retroactive to the date the final judgment was issued. *See Alvarez v. Salazar*, 338 So. 3d 267, 271 (Fla. 4th DCA 2022) (holding that a "child support correction should have been made retroactive to the date the final judgment was issued"); *see also DeSantis v. Smith*, 634 So. 2d 796, 797 (Fla. 4th DCA 1994) ("Retroactivity is the rule rather than the exception which guides the trial court's application of discretion when modification of alimony or child support is granted."). Similarly, the new alimony calculation should be made retroactive to the date of the final judgment.

### *Domestic Violence Injunction*

Finally, as to the domestic violence injunction, we reverse for the trial court to conform the written injunction to the court's oral pronouncement that the injunction would not prevent the Husband "from attending all legitimate activities that [the minor daughter] is involved in at school, and only at the school." *See Paskert v. Steffensmeier*, 295 So. 3d 361, 361 (Fla. 2d DCA 2020) ("When a written judgment is inconsistent with the oral pronouncement, reversal is required."). Contrary to the Wife's argument, the written injunction's generic reference to the family court case number was insufficient to clarify that the Husband would not violate the injunction by attending the child's school activities.

### *Conclusion*

We affirm both judgments as to any portion not specifically referenced above.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

GROSS, DAMOORGIAN and FORST, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**